UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCES YVONNE SCHULMAN, <br><br> *Plaintiff*, <br><br> v. <br><br> ZOETIS, INC. <br> and ZOETIS REFERENCE LABS, LLC, <br><br> *Defendants*. | **FIRST AMENDED COMPLAINT** <br><br> JURY TRIAL DEMANDED <br><br> Civ. Action No.: 2:22-cv-1351 (JXN)(LDW) |

Plaintiff Frances Yvonne Schulman, by her undersigned attorneys Harrison, Harrison & Associates, Ltd., Kakalec Law PLLC and National Women's Law Center, for her First Amended Complaint, alleges as follows:

**Preliminary Statement**

1. Plaintiff Frances Yvonne Schulman ("Dr. Schulman") worked for Defendants Zoetis, Inc. and Zoetis Reference Labs, LLC (collectively, "Defendants" or "Zoetis") as a veterinary anatomic pathologist. At the time she was hired, Dr. Schulman had thirty-two years of experience in the field of veterinary anatomic pathology.

2. Zoetis did not provide Dr. Schulman equal pay for equal work when compared with her colleagues who worked in the same role who were men.

3. Zoetis paid Dr. Schulman substantially lower wages than veterinary pathologists who were men and performed the same job. For example, she was paid approximately $105,000 less than one man with six fewer years of experience and $70,000 less than another man with nineteen fewer years of experience.

4. Zoetis informed Dr. Schulman that she would receive an annual bonus. As Zoetis tied bonuses to an employees' base salaries, Dr. Schulman would have received a bonus that was lower than that of the higher-paid men who were veterinary pathologists and performed the same job.

5. When Dr. Schulman presented Zoetis with this gender pay inequity, Zoetis refused to remedy it. Instead, Zoetis refused to make any adjustment to her compensation.

6. Zoetis refused to remedy this gender pay inequity despite proclaiming, on its website, that it is "committed to accelerating inclusion, equity and more diverse representation across the company." Zoetis, *Diversity, Equity & Inclusion*, https://www.zoetis.com/sustainability/communities/diversity-equity-inclusion/index.aspx (accessed Mar. 11, 2022).

7. To remedy this discriminatory pay inequity, Dr. Schulman brings this action under the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d) *et seq.*, Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Diane B. Allen Equal Pay Act ("NJEPA"), N.J.S.A. § 10:5-12(t), and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.* Plaintiff seeks, *inter alia*, her unpaid wages, including back pay and front pay; liquidated damages; compensatory damages (including damages for emotional distress); injunctive and declaratory relief; and attorneys' fees.

## Jurisdiction and Venue

8. The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 206(d) *et seq.* (EPA), and 42 U.S.C. § 2000e *et seq.* (Title VII).

9. The Court has jurisdiction over Plaintiff's pendant state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). Plaintiff's state law claims are part of the same case or controversy as Plaintiff's federal claims.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391. Defendants maintain their principal place of business in this district, and therefore reside in this district for purposes of 28 U.S.C. § 1391.

11. In addition, on information and belief, a substantial part of the acts and/or omissions giving rise to the claims alleged in this First Amended Complaint occurred within this district.

**Parties**

12. Plaintiff Frances Yvonne Schulman is a woman who has resided and currently resides in New Hampshire.

13. Plaintiff was employed by Zoetis between September 16, 2020 and November 4, 2021, as a full-time veterinary pathologist (with an official title of "anatomic pathologist").

14. Plaintiff consents in writing to becoming a party in this action. A true and correct copy of Plaintiff's consent form is attached hereto as Exhibit 1.

15. Dr. Schulman has worked in the field of veterinary pathology since 1988, and has been a board-certified veterinary pathologist since 1992.

16. Dr. Schulman completed her undergraduate education at Harvard University in 1983 and earned her Doctorate in Veterinary Medicine from Tufts University School of Veterinary Medicine in 1987.

17. Dr. Schulman completed a residency in Pathology at Angell Memorial Animal Hospital in Boston, Massachusetts in 1990, and a residency in Pathology at the Smithsonian Institution's National Zoological Park in Washington, D.C.in 1992.

18. After her residencies, Dr. Schulman was awarded a fellowship at the Armed Forces Institute of Pathology in Washington, D.C., where she was subsequently hired as a staff pathologist and appointed Head of the World Health Organization (WHO) Collaborating Center for Worldwide Reference on Comparative Oncology. She worked for the Armed Forces Institute of Pathology for a total of eighteen years, ending in 2011.

19. From 1993 to 2019, Dr. Schulman also worked as a diagnostic pathologist for Marshfield Laboratories in Marshfield, Wisconsin.

20. From February to September 2020, Dr. Schulman worked as a veterinary diagnostic pathologist, as a contractor, for ZNLabs.

21. Over the course of her career, Dr. Schulman has been a leader in her field as an editor or associate editor for several major publications. She has also authored or co-authored over fifty peer-reviewed publications in the field of veterinary pathology,

22. Zoetis, Inc. is a corporation organized under the laws of Delaware, with its headquarters located at 10 Sylvan Way, Parsippany, NJ 07054.

23. Zoetis Reference Labs, LLC is a limited liability company organized under the laws of Delaware, with its headquarters located at 10 Sylvan Way, Parsippany, NJ 07054.

24. Zoetis, Inc. and Zoetis Reference Labs, LLC maintained united operations, such that nominal employees of one entity were treated interchangeably with those of the other.

25. Zoetis, Inc. and Zoetis Reference Labs, LLC have common ownership and management.

26. Zoetis, Inc. and Zoetis Reference Labs, LLC hold themselves out to the public as a single company, "Zoetis," and third parties understand them as a single company, "Zoetis."

27. Zoetis describes itself on its website as a "global animal health company" that "deliver[s] quality medicines, vaccines and diagnostic products, complemented by biodevices,

      genetic tests, and precision livestock farming." *See* Zoetis, *About Us*, https://www.zoetis.com/about-us/index.aspx (accessed Feb. 11, 2022).

28. According to its corporate website, Zoetis employs over 11,000 people and had an annual revenue of $6.7 billion in 2020. *See* Zoetis, *Zoetis at a Glance*, https://www.zoetis.com/about-us/zoetis-at-a-glance.aspx (accessed Feb. 11, 2022).

29. At all times relevant to this action, Zoetis has been an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203(r)–(s), and Title VII, 42 U.S.C. § 2000e(b), (g)–(h).

30. At all times relevant to this action, Defendants operated as a "single employer," "single integrated enterprise," and/or "joint employer" in employing Plaintiff, as defined in the FLSA and its attendant regulations, *see* 29 U.S.C. § 203(r).

31. At all times relevant to this action, Defendants operated as a "single employer," "single integrated employer," and/or "joint employer" in employing Plaintiff, as defined in caselaw interpreting Title VII and the NJLAD.

32. At all times relevant to this action, Defendants were an "employer" of Plaintiff as defined 29 U.S.C. § 203(d), 42 U.S.C. § 2000e(b), and N.J.S.A. § 10:5-5(e).

33. At all times relevant to this action, Plaintiff was an "employee" of Defendants as defined by 29 U.S.C. § 203(e), 42 U.S.C. § 2000e(f), and N.J.S.A. § 10:5-5(f).

34. At all times relevant to this action, Defendants "employed" Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(g); 42 U.S.C. § 2000e(f); and N.J.S.A. §§ 10:5-5, 10:5-12(a) & (t).

35. At all times relevant to this action, Plaintiff was a "member of a protected class" within the meaning of N.J.S.A. 10:5-12(t).

36. At all times relevant to this action, Plaintiff was an "individual" within the meaning of N.J.S.A. 10:5-12(a) & (t).

**Factual Allegations**

*Hiring and Initial Months of Employment*

37. In August 2020, Zoetis offered Plaintiff a full-time position as an anatomic pathologist (a position also referred to as a veterinary pathologist), with an annual salary of $125,000, plus company benefits.

38. Zoetis also informed Plaintiff that she would receive an annual bonus, based on her salary, according to the company's bonus compensation policy.

39. Plaintiff's position was with a division of Zoetis called Zoetis Reference Labs. Zoetis has its headquarters in New Jersey.

40. Plaintiff worked using equipment provided by Zoetis, including a computer, monitors, a microphone for dictation, a camera, and other computer accessories which were, upon information and belief, shipped from New Jersey.

41. On information and belief, decisions about Plaintiff's compensation were made centrally by Zoetis upper management executives, including Richard Goldstein, Lisa Lee, and Abhay Nayak, who were based in New Jersey.

42. On September 16, 2020, Plaintiff started her employment with Zoetis and began working with the Zoetis Reference Labs team of veterinary pathologists. Throughout her employment, Plaintiff worked remotely from her home office in New Hampshire. The team of veterinary pathologists worked remotely from home offices or other locations throughout the country.

43. Plaintiff's job, and that of other pathologists on the Zoetis Reference Labs team, was to evaluate biopsy specimens that were processed at a central laboratory in Louisville,

Kentucky. These specimens were then assigned to different pathologists, who would analyze them in conjunction with other case material and write reports, including histologic descriptions, diagnoses, pictures and case comments, to help the submitting veterinarian to identify the type/cause of illness and prognosis, as well as to guide treatment.

44. Plaintiff and the Zoetis Reference Labs team of pathologists all worked under and were supervised by a single manager. From the start of Plaintiff's employment through approximately February 4, 2021, Plaintiff and the Zoetis Reference Labs team of pathologists worked under David Gardiner, Director of Anatomic Pathology. From around June 2021 through the end of Plaintiff's employment, Plaintiff and the Zoetis Reference Labs team worked under Mark Ackermann, Director of Anatomic Pathology.

45. Plaintiff and the Zoetis Reference Labs team of pathologists all worked under the same Vice President, Richard Goldstein, who also served as Executive Director and Chief Medical Officer of U.S. Diagnostics.

46. The team worked together collaboratively, and its operations were interconnected. They had team meetings and regularly consulted with one another about difficult or specialized cases. Plaintiff was consulted daily by other pathologists on the team because of her experience.

47. The team's operations were also interconnected in the sense that work was centrally reassigned between different pathologists. For example, when one pathologist was on vacation or out sick, their work was reassigned to other pathologists.

48. On information and belief, all the members of the team were subject to the same central Zoetis hiring processes.

49. On information and belief, all the members of the team were required to complete the same onboarding trainings when they began their employment with Zoetis.

50. On information and belief, personnel and pay decisions for the team of pathologists were determined centrally by Zoetis management and communicated to each individual pathologist.

51. On information and belief, Dr. Schulman's pay was not determined by her manager Dr. David Gardiner, but was determined and/or approved centrally by Zoetis management including Richard Goldstein, Lisa Lee, and Abhay Nayak, who were based in New Jersey.

*Discovery of Pay Disparity*

52. In early 2021, Dr. Schulman learned that her annual salary was significantly lower than at least two men who were also employed as veterinary pathologists: Dr. Eugene "EJ" Ehrhart and Dr. Samuel Jennings.

53. Dr. Schulman, Dr. Jennings, and Dr. Ehrhart were each assigned approximately 25 cases per day.

*Comparator One: Dr. Eugene "EJ" Ehrhart*

54. Dr. Schulman discovered that her base salary was approximately $105,000 less than that of Dr. Eugene "EJ" Ehrhart, whom Zoetis paid approximately $230,000 annually as his salary, plus benefits, for his position as a veterinary pathologist.

55. As compared to Dr. Schulman, Dr. Ehrhart had six fewer years of experience as a board-certified veterinary pathologist.

56. On information and belief, because of his higher base salary, Dr. Ehrhart would have also received a higher bonus from Zoetis than Dr. Schulman would have received.

57. Dr. Ehrhart was hired by Zoetis at or around the time that Zoetis acquired his previous employer Ethos Diagnostic Services ("Ethos") in 2020.

58. In his position at Zoetis, Dr. Ehrhart served only as a veterinary pathologist.

59. Dr. Ehrhart's employment with Zoetis ended on or around June 7, 2021.

60. Zoetis determined how much to compensate Dr. Ehrhart when he became an employee of Zoetis.

61. Dr. Ehrhart's position required equal skill, equal effort, equal responsibility, and equal expertise as Dr. Schulman's position.

62. Dr. Ehrhart's position was performed under substantially equal conditions as Dr. Schulman's position and was substantially equal to Dr. Schulman's position.

63. Dr. Ehrhart's pay was not greater than Dr. Schulman's because of shift differentials, education, training, or experience.

64. Dr. Ehrhart's pay was not greater than Dr. Schulman's pursuant to a seniority system, a merit system, or a system which measures earnings by quantity or quality of production.

65. Dr. Ehrhart was not paid more than Dr. Schulman because of a factor related to his job as a veterinary pathologist.

*Comparator Two: Dr. Samuel Jennings*

66. Dr. Schulman also discovered that her base salary was $70,000 less than that of Dr. Samuel Jennings, whom Zoetis paid $195,000 annually as his salary, plus benefits, for his position as a full-time veterinary pathologist.

67. As compared to Dr. Schulman, Dr. Jennings had nineteen fewer years of experience as a board-certified veterinary pathologist.

68. On information and belief, because of his higher base salary, Dr. Jennings would have also received a higher bonus from Zoetis than Dr. Schulman would have received.

69. Dr. Jennings was hired by Zoetis at or around the time Zoetis acquired his previous employer, Ethos, in 2020.

70. Dr. Jennings served only as a veterinary pathologist during the time he and Dr. Schulman both worked at Zoetis.

71. Zoetis determined how much to compensate Dr. Jennings when he became an employee of Zoetis.

72. Dr. Jennings's position required equal skill, equal effort, equal responsibility, and equal expertise as Dr. Schulman's position.

73. Dr. Jennings's position was performed under substantially equal conditions as Dr. Schulman's position and was substantially equal to Dr. Schulman's position.

74. Dr. Jennings's pay was not greater than Dr. Schulman's because of shift differentials, education, training, or experience.

75. Dr. Jennings's pay was not greater than Dr. Schulman's pursuant to a seniority system, a merit system, or a system which measures earnings by quantity or quality of production.

76. Dr. Jennings was not paid more than Dr. Schulman because of a factor related to his job as a veterinary pathologist.

*Internal Complaint of Pay Disparity*

77. On or around March 15, 2021, Dr. Schulman complained to Vice President Richard Goldstein about the pay disparity between her and men who were performing the same work as her in the same role. Shortly thereafter, she also spoke with Ivelisse Williams,

       Human Resources Business Partner Director for U.S. Operations, about being paid less for doing the same work as her fellow veterinary pathologists who were men.

78. In emails to Dr. Schulman over the following weeks, Dr. Goldstein indicated that he was speaking with HR and that there were meetings held to discuss the issue of her pay.

79. On March 24, 2021, Dr. Goldstein wrote to Dr. Schulman, in an email, that "we are trying to get approval to go beyond a normal salary correction" and asked her for "an idea what you think is fair given that we cant [sic] fix it all at once but for a first step."

80. Dr. Schulman responded that she felt she needed to be paid at least as much as "EJ," meaning Dr. Eugene Ehrhart, who had six fewer years' experience than her and was paid $230,000 by Zoetis, while Dr. Schulman was paid $125,000.

81. Dr. Schulman followed up with Ms. Williams several times over the following weeks about the status of her salary correction, but did not receive a resolution.

82. Finally, in mid-May 2021, Ms. Williams informed Dr. Schulman by telephone that Zoetis considered her salary to be a "fair market price" for her job, and would not correct or raise her salary. Ms. Williams also informed Dr. Schulman that Ms. Williams had been instructed not to put anything in writing about this issue.

83. On information and belief, the final decision not to raise Dr. Schulman's pay was made by upper management executives including Dr. Goldstein, Lisa Lee, and Abhay Nayak. These executives, who have the final say on decisions regarding salaries for the Zoetis Reference Lab division, were based in New Jersey.

84. On May 28, 2021, Dr. Schulman, through counsel, sent a letter to Zoetis asserting claims under the EPA and Title VII, and again requesting that Zoetis correct the pay disparity and sex discrimination.

85. On June 23, 2021, Zoetis, through counsel, sent a letter in which it declined to take any corrective action.

86. In addition, Zoetis failed to pay Dr. Schulman her promised bonus.

87. On or around October 15, 2021, Dr. Schulman gave her notice and resigned from Zoetis, because of the pay inequity and sex discrimination she faced there. Zoetis cut her off from all access to Zoetis and use of her work computer the following Monday, October 18, 2021.

88. In an October 18, 2021 email to her veterinary pathologist colleagues, Dr. Schulman wrote: "Some time ago, I came to understand that male colleagues at Zoetis who had the same job title as me and less experience than me were being paid significantly more than I was being paid (up to twice as much). I repeatedly raised the issue with Zoetis HR and management, and they declined to correct the situation. Thus, I felt I had no choice but to look elsewhere for employment."

89. Dr. Schulman's last official day as an employee was November 4, 2021.

*New Hampshire Commission for Human Rights Charge*

90. Plaintiff filed a charge of discrimination on August 9, 2021, with the New Hampshire Commission for Human Rights ("NHCHR") alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and the federal Equal Pay Act, as well as violations of the New Hampshire Equal Pay Act and New Hampshire Law Against Discrimination. The charge was also sent to and deemed cross-filed with the Equal Employment Opportunity Commission ("EEOC").

91. On February 14, 2022, after more than 180 days had elapsed from the date she filed her charge with the NHCHR, Plaintiff through counsel informed the NHCHR that she would

91. be bringing a lawsuit against Zoetis. On February 15, 2022, the NHCHR ended its processing of the charge.

92. On February 23, 2022, Plaintiff through counsel requested a "right to sue" letter from the EEOC.

93. On March 8, 2022, Plaintiff received a "right to sue" letter from the EEOC. *See* Ex. 2, attached.

### First Cause of Action
(Federal Equal Pay Act Violations – 29 U.S.C. § 206(d) *et seq.*)

94. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

95. Zoetis employed Dr. Schulman and two men, Drs. Samuel Jennings and Eugene Ehrhart, as veterinary pathologists, and these jobs required equal skill, effort, and responsibility, and took place under similar working conditions.

96. Dr. Schulman was paid a lower wage than at least two men, Drs. Samuel Jennings and Eugene Ehrhart, who were doing work equal to the work she was doing as a veterinary pathologist.

97. Zoetis discriminated against Dr. Schulman on the basis of sex by paying her wages at a rate less than the rate at which Zoetis paid men doing equal work. This pay differential violated the federal Equal Pay Act, 29 U.S.C. § 206(d), and its implementing regulations.

98. Plaintiff is therefore entitled to her unpaid wages (based on the amount of underpayment), plus an additional equal amount in liquidated damages, as a consequence of Defendants' unlawful pay discrimination, in accordance with 29 U.S.C. § 216(b).

99. Plaintiff also seeks, and is entitled to, attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b), and interest.

## Second Cause of Action
(Title VII Violations – Discrimination on the Basis of Sex – 42 U.S.C. § 2000e *et seq.*)

100. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

101. Defendants decided to pay Plaintiff a salary lower than the one it paid to at least two men in the same position doing the same work, Drs. Samuel Jennings and Eugene Ehrhart, and thus discriminated against Plaintiff based on sex.

102. Defendants also refused to correct this unequal pay, and therefore continued its sex discrimination against Plaintiff even after being clearly and repeatedly notified of this sex discrimination.

103. Defendants' actions were unlawful employment practices under 42 U.S.C. § 2000e-2(a)(1).

104. Plaintiff is therefore entitled to back pay, front pay, compensatory damages (including damages for emotional distress, suffering, inconvenience, loss of enjoyment of life, and humiliation), and punitive damages, in accordance with 42 U.S.C. § 2000e-5(g)(1) and 42 U.S.C. § 1981(a).

105. Plaintiff also seeks, and is entitled to, attorneys' fees and costs, in accordance with 42 U.S.C. § 2000e-5(k), and interest.

## Third Cause of Action
(Diane B. Allen Equal Pay Act Violations – N.J.S.A. § 10:5-12(t))

106. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

107. Zoetis employed Dr. Schulman and two men, Drs. Samuel Jennings and Eugene Ehrhart, in substantially similar jobs as veterinary pathologists, i.e., jobs requiring substantially similar skill, effort and responsibility.

108. Dr. Schulman, who was a member of a protected class due to her status as a woman, was paid a lower rate of compensation than at least two men, Drs. Samuel Jennings and Eugene Ehrhart, doing substantially similar work.

109. This pay differential was an unlawful employment practice that violated the NJEPA, N.J.S.A. § 10:5-12(t), and its implementing regulations.

110. Plaintiff is entitled to three times the amount of her monetary damages (i.e., her unpaid wages based on the amount of underpayment plus twice that amount as liquidated damages) as a consequence of Defendants' unlawful employment practice, in accordance with N.J.S.A. § 10:5-13(a)(2)(d).

111. Plaintiff also seeks, and is entitled to, attorneys' fees and costs, pursuant to N.J.S.A. § 10:5-27.1, and interest.

**Fourth Cause of Action**
(New Jersey Law Against Discrimination – N.J.S.A. § 10:5-12(a))

112. Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

113. Defendants paid Plaintiff wages which were lower than the wages it paid to at least two men, Drs. Samuel Jennings and Eugene Ehrhart, in the same position doing the same work, and thus Defendants discriminated against Plaintiff with respect to her compensation based on her sex.

114. Defendants failed to compensate Plaintiff for its gender based discriminatory pay, and continued to discriminate against Plaintiff after it was repeatedly put on notice regarding this sex discrimination.

115. Defendants' actions were unlawful employment practices under N.J.S.A. § 10:5-12(a).

116. Plaintiff is entitled to back pay, front pay, compensatory damages (including damages for emotional distress, suffering, inconvenience, loss of enjoyment of life, and humiliation), and punitive damages, in accordance with N.J.S.A. § 10:5-13(a)(2)(b) and attendant caselaw.

117. Plaintiff also seeks, and is entitled to, attorneys' fees and costs, pursuant to N.J.S.A. § 10:5-27.1, and interest.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

**WHEREFORE**, Plaintiff requests that this Court enter an Order:

a. assuming jurisdiction over this action;

b. declaring Defendants violated the EPA, Title VII, NJEPA, and NJLAD;

c. permanently enjoining Defendants from further violations of the EPA, Title VII, NJEPA, and NJLAD;

d. granting judgment to Plaintiff on her EPA claims and awarding Plaintiff her unpaid wages (based on the amount of underpayment) and an equal amount in liquidated damages;

e. granting judgment to Plaintiff on her Title VII claims and awarding Plaintiff backpay, front pay, compensatory damages (including damages for emotional distress, suffering, inconvenience, loss of enjoyment of life, and humiliation), in amounts to be determined at trial, and punitive damages;

    f.   granting judgment to Plaintiff on her NJEPA claims and awarding Plaintiff her unpaid wages (based on the amount of underpayment) and twice that amount in liquidated damages;

    g.   granting judgment to Plaintiff on her NJLAD claims and awarding Plaintiff backpay, front pay, compensatory damages (including damages for emotional distress, suffering, inconvenience, loss of enjoyment of life, and humiliation), in amounts to be determined at trial, and punitive damages;

    h.   Awarding Plaintiff prejudgment and postjudgment interest as allowed by law;

    i.   Awarding Plaintiff her costs and reasonable attorneys' fees; and

    j.   Granting such further relief as the Court deems just and proper.

DATED:    Red Bank, NJ
                 March 24, 2023

*As to the First Amended Complaint:*

**HARRISON, HARRISON & ASSOCIATES, LTD.**

         Julie Salwen
Julie Salwen
David Harrison
Harrison, Harrison & Associates, Ltd.
110 Highway 35, Suite #10
Red Bank, NJ 07701
(718) 799-9111
jsalwen@nynjemploymentlaw.com
dharrison@nynjemploymentlaw.com
*Local Counsel for Plaintiff*

**KAKALEC LAW PLLC**

Hugh Baran (he/him)

Patricia Kakalec (she/her)
Kakalec Law PLLC
195 Montague Street, 14th Floor
Brooklyn, NY 11201
(212) 705-8730
Hugh@KakalecLaw.com
Patricia@KakalecLaw.com
*(Admitted pro hac vice)*
*Attorneys for Plaintiff*

**NATIONAL WOMEN'S LAW CENTER**

Sunu Chandy (she/her)
Gaylynn Burroughs (she/her)*
Emily Martin (she/her)
*not admitted to practice in DC; working under the supervision of DC Bar members
National Women's Law Center
11 Dupont Circle NW, Suite 800
Washington, DC 20036
(202) 588-5180

schandy@nwlc.org
gburroughs@nwlc.org
emartin@nwlc.org
*(Admitted pro hac vice)*
*Attorneys for Plaintiff*