## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCES YVONNE SCHULMAN,<br><br>*Plaintiff*,<br><br>*v.*<br><br>ZOETIS, INC. and ZOETIS REFERENCE LABS, LLC,<br><br>*Defendants.* | Civ. Action No.:<br>2:22-cv-1351 (JXN)(LDW)<br><br>ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**HARRISON, HARRISON & ASSOCIATES, LTD.**
Julie Salwen
David Harrison
Harrison, Harrison & Associates, Ltd.
110 Highway 35, Suite #10
Red Bank, NJ 07701
(718) 799-9111
jsalwen@nynjemploymentlaw.com
dharrison@nynjemploymentlaw.com

*Local Counsel for Plaintiff*

**KAKALEC LAW PLLC**
Hugh Baran (he/him)
Patricia Kakalec (she/her)
Kakalec Law PLLC
195 Montague Street, 14th Floor
Brooklyn, NY 11201
(212) 705-8730
Hugh@KakalecLaw.com
Patricia@KakalecLaw.com

*Attorneys for Plaintiff*

**NATIONAL WOMEN'S LAW CENTER**
Rachel Smith (she/her)
Sunu Chandy (she/her)
Gaylynn Burroughs (she/her)
Emily Martin (she/her)
National Women's Law Center
11 Dupont Circle NW, Suite 800
Washington, DC 20036
(202) 588-5180
rsmith@nwlc.org
schandy@nwlc.org
gburroughs@nwlc.org
emartin@nwlc.org

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL & PROCEDURAL BACKGROUND ................................... 3

LEGAL STANDARD ................................................................................ 7

ARGUMENT .............................................................................................. 8

I. Dr. Schulman Has Plausibly Alleged That New Jersey Law Applies to Her Claims. .......................................................................................................... 8

   A.   The New Jersey Legislature Intended for the New Jersey Law Against Discrimination to Be Applied Broadly. ............................................... 9

   B.   Dr. Schulman Has Sufficiently Alleged That She Is Entitled to the Protections of the NJEPA and Section 12(a). ................................... 14

      1. The New Jersey Legislature Specifically Extended the New Jersey Equal Pay Act's Protection to "Any" of the Protected Employees of NJLAD-Subject Employers .................................................... 17

      2. Dr. Schulman Has Plausibly Alleged That New Jersey Has the Most Significant Relationship to Her Claims Under the NJEPA and Section 12(a). ....................................................................................... 19

II. Further Discovery Is Needed to Definitively Resolve the Choice-of-Law Question. ........................................................................................................ 30

III. Defendants' Motion Improperly Relies on Facts and Documents Beyond the Complaint, Which the Court Should Ignore. .................................... 31

CONCLUSION ......................................................................................... 35

# TABLE OF AUTHORITIES

## Cases

*Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)............................23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................................8

*Bausch Health Ir. Ltd. v. Mylan Labs.*, No. 21-10403 (SRC)(JSA), 2022 WL
    683084, (D.N.J. Mar. 8, 2022) ...............................................................30

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).......................................7

*Buckley v. Power Windows & Sidings, Inc*., Civ. A. No. 09-3162 (JAP), 2010 WL
    3981978, at *3 (D. N.J. 2010) ...............................................................28

*Calabotta v. Phibro Animal Health Corp*, 460 N.J. Super. 38, 45 (App. Div. 2019)
    ...................................................................................................... passim

*Catalane v. Gilian Instrument Corp.*, 271 N.J. Super. 476, 491 (App. Div. 1994)...9

*D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516 (1993) ...............................25

*DeJoy v. Comcast Cable Comms., Inc.*, 941 F. Supp. 468, 476 (D.N.J. 1996) .......10

*Doe v. Boys & Girls Club of Clifton*, No. 20-03008 (JXN) (ESK), 2021 WL
    3400862, at *2 (D.N.J. Aug. 4, 2021) ....................................................8

*Donovan v. W.R. Berkley Corp.*, 566 F. Supp. 3d 224, 233 (D.N.J. 2021) . 8, 11, 18,
    27

*E.D. Sweet, Inc. v. N.H. Comm'n for Human Rights*, 124 N.H. 404 (1983) ...........15

*Fuchilla v. Layman*, 109 N.J. 319, 334 (1988) .........................................................9

*Greene v. BMW of N. Am.*, Civ. No. 2:11-04330, 2014 WL 47940, at *3 (D.N.J.
    Jan. 7, 2014).........................................................................................23

*Hayden v. Hartford Life Ins. Co.*, Civ. A. No. 10-3424 (GEB), 2010 WL 5140015,
    at *4 (D. N.J. Dec. 9, 2010).................................................................25

*In re Accutane Litig.*, 235 N.J. 229, 259 (2018) ....................................................19

*In re Burlington Coat Factory Sec. Litig.*, 113 F.3d 1410, 1426 (3d Cir. 1997)8, 30, 31, 32

*Kurdyla v. Pinkerton Sec.,* 197 F.R.D. 128, 131 (D.N.J. 2000) ..............................32

*Meade v. Twp. of Livingston*, 249 N.J. 310, 327 (2021)....................................... 9, 27

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001)....................................................................................................................24

*Nini v. Mercer Cnty. Comm'ty. Coll.*, 202 N.J. 98, 115 (2010)........................ 10, 27

*Rampersad v. Dow Jones & Co., Inc.*, No. 19-11733 (MAS)(TJB), 2020 WL 529212, at *3 (D.N.J. Jan. 31, 2020).................................................. 11, 15, 18, 29

*Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F.Supp.3d 449, 461 (D.N.J. 2020) .................................................................................................. 8, 30

*Schmidt v. Skolas,* 770 F.3d 241, 250 (3d Cir. 2014) ...............................................30

*Smith v. Millville Rescue Squad*, 225 N.J. 373, 390 (2016) ....................................10

*Trevejo v. Legal Cost Control, Inc.*, No. A-1377-16T4, 2018 WL 1569640, at *2 (App. Div. Apr. 2, 2018) ......................................................................................20

*Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).........................7

**Statutes**

21 U.S.C. § 355(j)(2)(A)(vii)(III) .............................................................................30

21 U.S.C. § 355(j)(2)(A)(vii)(IV) .............................................................................30

N.H. RSA § 275:37 ....................................................................................................14

N.H. RSA § 354-A:1 *et seq.* ......................................................................................15

N.H. RSA § 354-A:21-a(I).........................................................................................15

N.J.S.A. § 10:5-1 *et seq.* .............................................................................................2

N.J.S.A. § 10:5-12(a) ..................................................................................................2

N.J.S.A. § 10:5-12(t) ........................................................................... 2, 16, 17

N.J.S.A. § 10:5-3 ................................................................................... 10, 11

N.J.S.A. § 10:5-5 ............................................................................................2

N.J.S.A. § 10:5-5(a) ......................................................................................11

N.J.S.A. § 10:5-5(e) ................................................................................ 12, 16

N.J.S.A. § 10:5-5(f) ................................................................................ 12, 16

**Other Authorities**

CHARLES A. WRIGHT AND ARTHUR R. MILLER, 5 FED. PRAC. & PROC. CIV. § 1224
(4th ed. 2022) ...........................................................................................23

Restatement (Second) of Conflict of Laws §§ 6, 145-46 (Am L. Inst. 1971) . passim

## PRELIMINARY STATEMENT

Dr. Frances Yvonne Schulman ("Plaintiff" or "Dr. Schulman") brings this case seeking to remedy a gross pay inequity perpetrated by New Jersey-headquartered companies, Zoetis, Inc.[1] and Zoetis Reference Labs, LLC ("Defendants" or "Zoetis"), which employed her as a remote worker. Zoetis paid Dr. Schulman, a veterinary pathologist and a woman, approximately $105,000 less than one veterinary pathologist who is a man with six fewer years of experience and $70,000 less than another veterinary pathologist who is a man with nineteen

[1] Defendant Zoetis, Inc., has not moved to dismiss any of Dr. Schulman's claims on the basis that it is not a proper party but has merely suggested, in footnotes, that it is not a proper party. *See* Defs.' Mem., ECF No. 62-1, at 1 nn. 1–2, 4 n.4. Dr. Schulman maintains that Zoetis, Inc. is properly named as a party here, in part because Zoetis, Inc. already admitted, in a position statement filed with the local civil rights agency, that it was correctly named in Dr. Schulman's Charge of Discrimination. Nevertheless, because some facts emerged in discovery suggesting that the entity Zoetis Reference Labs, LLC was also involved in her employment, Dr. Schulman added the LLC as an additional party.

Defendants are incorrect, however, that Plaintiff has improperly conflated the entities. Rather, Plaintiff has made specific allegations in her First Amended Complaint that Defendants operated as a as a "single employer," "single integrated employer," and/or "joint employer" in employing Plaintiff, as defined in caselaw interpreting Title VII and the NJLAD, First Am. Compl. ("FAC"), ECF No. 52, ¶ 31. Plaintiff alleges that the entities have common ownership and management, hold themselves out to the public as a single company, "Zoetis," and are understood by third parties as such, and maintain united operations such that nominal employees of one entity were treated interchangeably with those of the other. FAC ¶¶ 24–26, 30–31. In addition, Defendants have acknowledged that the LLC is a wholly owned subsidiary of Zoetis, Inc. *See* Corporate Disclosure Stmt., ECF No. 15. Accordingly, Plaintiff collectively refers to Zoetis, Inc. and Zoetis References Labs in this Opposition as "Defendants" or "Zoetis."

fewer years of experience. Dr. Schulman seeks to vindicate her rights under both federal and New Jersey laws prohibiting such discrimination.

Dr Schulman's state law claims are consistent with the State Legislature's broad interest in rooting out pay discrimination at New Jersey-headquartered businesses, expressed in both the New Jersey Law Against Discrimination ("NJLAD") as a whole, as well as in the explicit text of the New Jersey Equal Pay Act ("NJEPA"). The NJEPA, which is a part of the NJLAD,[2] specifically makes it an unlawful employment practice for an NJLAD-subject employer to pay "*any of its employees who is a member of a protected class* at a rate of compensation, including benefits, which is less than the rate paid by the employer to employees who are not members of the protected class for substantially similar work," N.J.S.A. § 10:5-12(t) (emphasis added). The NJEPA also explicitly requires that

---

[2] The primary operative provision of the NJEPA is N.J.S.A. § 10:5-12(t), which is contained within the full NJLAD statute, N.J.S.A. § 10:5-1 *et seq.* Dr. Schulman also brings a claim under the NJLAD's broad prohibition of employment discrimination provision, N.J.S.A. § 10:5-12(a)—which, as relevant here, makes it an "unlawful employment practice" "[f]or an employer, because of the . . . sex . . . of any individual . . . to discriminate against such individual in compensation or in terms, conditions, or privileges of employment . . . . "

For the purposes of clarity, "NJLAD" as used in this brief refers to the statute as a whole, N.J.S.A. § 10:5-1 *et seq.* "Section 12(a)" as used in this brief refers specifically to N.J.S.A. § 10:5-12(a). By contrast, "NJEPA" as used in this brief refers specifically to N.J.S.A. § 10:5-12(t).

Of course, both Section 12(a) and the NJEPA incorporate definitions contained in N.J.S.A. § 10:5-5, as explained below.

comparisons of pay be made based on all employees of a business, and does not distinguish based on where in the country those employees are based. *Id.*

Dr. Schulman has pleaded facts sufficient to show that NJLAD-subject companies, the New Jersey-headquartered Zoetis, Inc. and Zoetis Reference Labs, LLC, paid her, one of their women employees, at a rate less than men who were doing the same job, and appears to have made these discriminatory pay decisions in New Jersey, in violation of the NJEPA and Section 12(a).

Accordingly, and for the reasons explained below, Dr. Schulman has alleged facts that sufficiently demonstrate that she has plausible claims for relief under the NJEPA and Section 12(a). As such, Defendant's motion to dismiss Dr. Schulman's NJEPA and Section 12(a) Causes of Action should be denied in its entirety.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Frances Yvonne Schulman is a highly credentialed veterinary pathologist who has worked in the field of veterinary pathology since 1988 and has been board-certified since 1992. Dr. Schulman began working remotely for Zoetis, within a division called Zoetis Reference Labs, on September 16, 2020. FAC ¶¶ 13, 42. Defendants were and are headquartered in New Jersey, *id.* ¶ 39, and Zoetis's upper management executives were and still are also based in New Jersey. These executives made personnel and pay decisions, including about Dr. Schulman's compensation, centrally. *Id.* ¶¶ 41, 50-51, 83.

3

Because Dr. Schulman was a remote worker who worked from her home in New Hampshire, Defendants shipped her work equipment from New Jersey, sending her a computer, monitors, a microphone for dictation, a camera, and other computer accessories, which she used to carry out her work for the company. *Id.* ¶ 40.

Dr. Schulman worked on a team with other remotely based veterinary pathologists, who also worked from home offices or other locations throughout the country. *Id.* ¶ 42. Her job, and that of other pathologists on the Zoetis Reference Labs team, was to evaluate biopsy specimens that were initially processed at a central laboratory in Louisville, Kentucky. *Id.* ¶ 43. These specimens were then assigned to different pathologists, who would analyze them in conjunction with other case material. *Id.* The pathologists would then write reports, including histologic descriptions, diagnoses, pictures, and case comments, to help the submitting veterinarians identify the type and cause of animals' illnesses and prognoses, as well as to guide treatments. *Id.*

Plaintiff and the team of other veterinary pathologists all worked under the same Zoetis Vice President, Richard Goldstein, who was based in New Jersey. *Id.* ¶¶ 41, 45. As a senior member of the team with deep experience in the field, Dr. Schulman was consulted daily by other remote pathologists on the team. *Id.* ¶ 46.

In early 2021, Dr. Schulman learned that her salary was significantly lower than at least two men who were also employed in the same job: Dr. Eugene "EJ" Ehrhart and Dr. Samuel Jennings. *Id.* ¶ 52. Like Dr. Schulman, Dr. Jennings and Dr. Ehrhart were each assigned approximately 25 cases per day; they performed the same job functions as Dr. Schulman. *Id.* ¶ 53. Dr. Schulman discovered that her base salary of $125,000 was approximately $105,000 less than that of Dr. Ehrhart, whom Zoetis paid approximately $230,000 annually as his salary, plus benefits, for his position as a veterinary pathologist, and was $70,000 less than that of Dr. Jennings, whom Zoetis paid $195,000 annually as his salary, plus benefits, for his position as a full-time veterinary pathologist. *Id.* ¶¶ 54, 66. Zoetis paid Dr. Schulman less than these men despite the fact that she performed the same job functions, *id.* ¶¶ 58, 70, had six more years of experience as a board-certified veterinary pathologist than Dr. Ehrhart, *id.* ¶ 55, and had nineteen more years of experience than Dr. Jennings, *id.* ¶ 67.

After Dr. Schulman discovered this pay inequity, she complained about it to Richard Goldstein on or around March 15, 2021. (Again, Dr. Goldstein was based in New Jersey. *Id.* ¶¶ 77, 41.) Dr. Goldstein in subsequent emails indicated that he was speaking with Human Resources, and that there were meetings held to discuss the issue of Dr. Schulman's pay. *Id.* ¶ 78. Finally, in mid-May 2021, Dr. Schulman was informed by Human Resources that Zoetis considered her salary to be a "fair

market price" for her job, and the company would not correct or raise her salary. *Id.* ¶ 82. The final decision not to raise Dr. Schulman's pay was made by upper management executives at Zoetis, including Dr. Goldstein, Lisa Lee, and Abhay Nayak. *Id.* ¶ 83. These executives, who had the final say on decisions regarding salaries for Zoetis Reference Labs employees, were all based in New Jersey. *Id.*

Dr. Schulman ultimately left Zoetis because of the continued pay inequity and sex discrimination she faced there, and Zoetis's refusal to do anything to correct it. *Id.* ¶¶ 87–88. Dr. Schulman's last day with Zoetis was November 4, 2021. *Id.* ¶ 89.

On March 14, 2022, Dr. Schulman sued Defendant Zoetis, Inc. in this District, alleging violations of the federal Equal Pay Act, *id.* ¶¶ 94–99, Title VII of the Civil Rights Act of 1964, as amended, *id.* ¶¶ 100-105, the New Jersey Equal Pay Act, *id.* ¶¶ 106-111, and the New Jersey Law Against Discrimination, *id.* ¶¶ 112–117.

On June 6, 2022, Defendant filed a partial Motion to Dismiss, seeking to dismiss both Dr. Schulman's NJEPA claim and her Section 12(a) claim. *See* Def.'s Mot. to Dismiss, ECF No. 14.

On March 24, 2023, following some discovery, Plaintiff filed her First Amended Complaint. FAC, ECF No. 52.

On April 21, 2023, Defendants filed the instant partial Motion to Dismiss, which again seeks to dismiss both Dr. Schulman's NJEPA claim and her Section 12(a) claim, and largely repeats the arguments of Zoetis, Inc.'s original motion to dismiss. Mot. to Dismiss FAC, ECF No. 62; Mem. of Law in Support of Mot., ECF No. 62-1 ("Defs.' Mem.").

Discovery in this action remains ongoing. While paper discovery has been exchanged, limited depositions have been able to be scheduled and no depositions of Defendants' witnesses have been held. Multiple depositions are now on the calendar between now and the scheduled end of discovery on July 31, 2023.

### LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiffs, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). While "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss, a complaint does not need to contain detailed factual allegations; it must simply plead "enough facts to state a claim of relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Doe v. Boys & Girls Club of Clifton*, No. 20-03008 (JXN) (ESK), 2021 WL 3400862, at *2 (D.N.J. Aug. 4, 2021) ("[A] complaint will

survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

In deciding a motion to dismiss, the district court "generally may not consider matters extraneous to the pleadings" unless the documents are "'integral to or explicitly relied upon in the complaint.'" *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 461 (D.N.J. 2020) (quoting *In re Burlington Coat Factory Sec. Litig.*, 113 F.3d 1410, 1426 (3d Cir. 1997)).

## ARGUMENT

### I. Dr. Schulman Has Plausibly Alleged That New Jersey Law Applies to Her Claims.

At the motion to dismiss stage, a plaintiff is required only to allege "some facts to show that he or she is entitled, as a threshold matter, to the protection of the NJLAD." *Donovan v. W.R. Berkley Corp.*, 566 F. Supp. 3d 224, 233 (D.N.J. 2021).

Here, because Dr. Schulman has alleged sufficient facts showing her entitlement to the protection of both the NJEPA and Section 12(a), her New Jersey claims should be allowed to proceed.

First, as explained in Part I.A below, the NJLAD can extend to out-of-state employees of New Jersey employers, despite Defendants' arguments to the contrary. *See* Defs.' Mem. at 9–10. As the state's intermediate appellate court

8

recently confirmed, the NJLAD applies to remote workers under "appropriate circumstances." *See Calabotta v. Phibro Animal Health Corp*, 460 N.J. Super. 38, 45 (App. Div. 2019).

Second, as explained in Part I.B below, Dr. Schulman has alleged sufficient facts to show that these are the kinds of "appropriate circumstances" in which both the NJEPA and Section 12(a) can apply to out-of-state workers of New Jersey employers, as New Jersey has the most significant relationship to her claims of any state.

In sum, and for the reasons explained below, Dr. Schulman has plausibly alleged facts sufficient to support her Third Cause of Action under the NJEPA, and her Fourth Cause of Action under Section 12(a), and thus Defendants' motion should be denied.

### A. The New Jersey Legislature Intended for the New Jersey Law Against Discrimination to Be Applied Broadly.

Defendants wrongly argue that the NJLAD does not extend to out-of-state employees of New Jersey employers. The opposite in fact is true. The NJLAD was enacted as broad remedial legislation with the goal of "nothing less than the eradication of the cancer of discrimination." *Meade v. Twp. of Livingston*, 249 N.J. 310, 327 (2021) (quoting *Fuchilla v. Layman*, 109 N.J. 319, 334 (1988)). The New Jersey Supreme Court has recognized that the NJLAD evinces the "clear public policy of this state" to "abolish discrimination in the workplace." *Catalane v.*

9

*Gilian Instrument Corp.*, 271 N.J. Super. 476, 491 (App. Div. 1994). As such, it is well settled that the NJLAD "should be liberally construed," as "the more broadly [the LAD] is applied the greater its antidiscriminatory impact." *Nini v. Mercer Cnty. Cmty. Coll.*, 202 N.J. 98, 115 (2010) (internal citations omitted); *see also DeJoy v. Comcast Cable Comms., Inc.*, 941 F. Supp. 468, 476 (D.N.J. 1996) ("The New Jersey Legislature declared its intent the NJLAD be interpreted liberally.") (citing N.J.S.A. § 10:5-3). These concerns trigger "special rules of interpretation" requiring courts to recognize the NJLAD's broad public policy goals when faced with interpretive questions about the statute. *Smith v. Millville Rescue Squad*, 225 N.J. 373, 390 (2016) (quoting *Nini*, 202 N.J. at 108).

As New Jersey's intermediate appellate court has confirmed, the State Legislature, in passing the NJLAD, did *not* intend to "limit the statute's protections to job applicants who live in New Jersey, or to those employees who perform all of their employment functions in New Jersey." *Calabotta*, 460 N.J. Super. at 64. Instead, the NJLAD "can extend in appropriate circumstances to plaintiffs who reside or work outside of this state." *Id.* at 45. In *Calabotta* the Appellate Division recognized that an out-of-state employee who applied for a transfer to a position in New Jersey and was discriminated against by a New Jersey-based employer could maintain failure-to-promote and wrongful dismissal claims under the NJLAD. *Id.* at 72–75. The *Calabotta* court found that the NJLAD's "broad and strong

10

language" permitted the plaintiff to bring claims under the statute, even though he lived and worked out-of-state. *Id.* at 61. Federal courts in this District have followed *Calabotta*'s interpretation of the NJLAD, holding that in the absence of "any New Jersey Supreme Court authority that suggests it would construe the NJLAD differently," the New Jersey Supreme Court "would adopt *Calabotta*'s reasoning." *Rampersad v. Dow Jones & Co., Inc.*, No. 19-11733 (MAS)(TJB), 2020 WL 529212, at *3 (D.N.J. Jan. 31, 2020); *see also Donovan*, 566 F. Supp. 3d at 230–33  (applying *Calabotta* framework).

Specifically, the *Calabotta* court held that the NJLAD's text and legislative purpose demonstrated a legislative intent "to allow certain nonresident plaintiffs to receive the benefits and protections of the NJLAD." 460 N.J. Super. at 60. As it observed, the NJLAD states clearly that "[t]he Legislature intends that such damages be available to *all persons* protected by this act and that this act shall be *liberally construed* in combination with other protections available under the laws of this State." N.J.S.A. § 10:5-3 (emphasis added). Moreover, the NJLAD broadly defines the term "person" without limiting it to New Jersey residents or in-state employees. N.J.S.A. § 10:5-5(a) ("'Person' includes one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries."); *see also Calabotta*, 460 N.J. Super. at 61. The NJLAD's definition of "employee" is

11

similarly expansive and is not limited to New Jersey residents or in-state employees; the only exclusion is for individuals employed in domestic service. N.J.S.A. § 10:5-5(f) ("'Employee' does not include any individual employed in the domestic service of any person."). Additionally, "employer" is defined broadly to include all persons not excluded by another subsection of the NJLAD. N.J.S.A. § 10:5-5(e) ("'Employer' includes all persons as defined in subsection a. of this section unless otherwise specifically exempt under another section of P.L.1945, c. 169 (C.10:5-1 et seq.), and includes the State, any political or civil subdivision thereof, and all public officers, agencies, boards, or bodies."). In short, the *Calabotta* court held that, "[h]aving carefully examined the NJLAD's text and extensive legislative history, we detect no expression of legislative intent to limit the statute's protections to job applicants who live in New Jersey, or to those employees who perform all of their employment functions in New Jersey." 460 N.J. Super. at 64.

Defendants recognized the importance of *Calabotta* in their brief, even though they attempted to minimize the case by claiming, in a footnote, that its facts are materially different and thus inapplicable to Dr. Schulman's claims. *See* Defs.' Mem. at 12 n.8. But *Calabotta*'s holding and framework apply beyond the precise circumstances presented in that case. *Calabotta* explained that, with respect to claims for which legislative intent was not clear, a choice-of-law analysis must be

12

conducted that is fact-intensive and considers all the relevant factors. *See Calabotta*, 460 N.J. Super. at 73–74. Moreover, the *Calabotta* court explicitly acknowledged that if a "plaintiff can establish that the company's [discriminatory] decision . . . was made or centered in New Jersey, that would be a counterweight on the New Jersey side of the scale," and that "[m]any other facts and factors may also bear upon the calculus." *Id.* at 73. And the *Calabotta* court expressly recognized that its holding—which was notably adopted over seven months *before* the onset of the COVID-19 pandemic in the United States and the changes it has sparked in many workplaces—had "practical significance" due to the changed nature of work in our world, "as employees and their supervisors more often perform their work tasks remotely in multiple locations rather than in a traditional common physical location" and "[t]he 'office' where an individual works" has become "an elusive or non-existent concept these days." *Id.* at 74.

Indeed, another court in this District recently applied *Calabotta* in holding that a remote worker employed by a New Jersey-headquartered employer could maintain a claim under the NJLAD against her employer, granting the plaintiff in that case leave to amend her complaint to add that claim. *Herrera v. Goya Foods, Inc.*, No. 21-11628-ES-AME, 2022 WL 16949129, at *6–8 (D.N.J. Nov. 14, 2022). The court in *Herrera* rejected the defendants' argument that leave to amend was

13

futile because she was a "nonresident of New Jersey whose work . . . occurred exclusively in another state." *Id.* at *4.

Critical to the court's analysis in *Herrera* was that "based on the facts alleged, it appears the decision to terminate Plaintiff was made in New Jersey." *Id.* at *6. Thus the Court found that the plaintiff had "alleged sufficient facts to connect her alleged discriminatory termination to New Jersey and thus avail herself of the NJLAD's protections," *id.* and that, after weighing the choice-of-law factors, "on balance, the factual allegations of the proposed Amended Complaint establish a sufficient connection to New Jersey to persuade the Court that Plaintiff's motion to add an NJLAD claim does not fail on grounds of futility," *id.* at *7.

### B. Dr. Schulman Has Sufficiently Alleged That She Is Entitled to the Protections of the NJEPA and Section 12(a).

In determining whether Dr. Schulman has alleged sufficient facts to show that she is entitled, as a threshold matter, to the protections of the NJEPA and Section 12(a), the Court must first determine whether an actual conflict exists between these New Jersey laws and the laws of any other interested states. *Calabotta,* 460 N.J. Super. at 57. If no conflict exists, then the law of the forum state applies automatically. *Id.* at 54.

14

If a conflict may exist—which Plaintiff accepts, for purposes of this motion, that there appears to be here[3]—then the Court "must consider whether New Jersey public policy requires the application of [New Jersey] substantive law…regardless of the interest of another state" as demonstrated by "an explicit statutory directive or by a process of interpretation and construction.'" *Rampersad*, 2020 WL 529212, at *3 (quoting *Calabotta*, 460 N.J. Super. at 55). Where statutory text and/or intent is clear, that is the end of the analysis, and New Jersey law applies. But where no such directive exists, a court must determine whether a plaintiff has plausibly alleged that New Jersey has the most significant relationship to her claims, in light of the factors set forth in the Restatement (Second) of Conflict of Laws. *Id.;* Restatement (Second) of Conflict of Laws §§ 6, 145-46 (Am L. Inst. 1971) (hereafter "Second Restatement").

---

[3] Plaintiff concedes that, for purposes of this motion, there appears to be an actual conflict between the NJEPA and New Hampshire's analogous cause of action, the New Hampshire Equal Pay Act, N.H. RSA § 275:37, and between the NJLAD and New Hampshire's Law Against Discrimination, N.H. RSA § 354-A:1 *et seq.* Nevertheless, Plaintiff disputes certain aspects of Defendants' analysis as to that conflict. For example, Defendants are mistaken that attorney's fees are unavailable in civil actions brought under the New Hampshire Law Against Discrimination. *See* N.H. RSA § 354-A:21-a(I) ("A court in cases so removed may award all damages and relief which could have been awarded by the commission . . . ."); *E.D. Sweet, Inc. v. N.H. Comm'n for Human Rights*, 124 N.H. 404 (1983) (finding New Hampshire Commission for Human Rights has authority to award reasonable attorney's fees).

As explained in Part I.B.1 below, the NJEPA's text clearly covers—and the Legislature intended the text to cover—claims such as Dr. Schulman's.

And as explained in Part I.B.2 below, with respect to both her claims under the NJEPA and Section 12(a), Dr. Schulman has alleged sufficient facts showing that New Jersey has the most significant relationship to her claims.

**1. The New Jersey Legislature Specifically Extended the New Jersey Equal Pay Act's Protection to "Any" of the Protected Employees of NJLAD-Subject Employers.**

The statutory text of the NJEPA is clear that *any* employees of an employer subject to the NJLAD who experience unlawful pay inequity are protected by the statute. Under the NJEPA, it is an "unlawful employment practice" "[f]or an employer to pay *any of its employees who is a member of a protected class* at a rate of compensation, including benefits, which is less than the rate paid by the employer to employees who are not members of the protected class for substantially similar work, when viewed as a composite of skill, effort and responsibility." N.J.S.A. § 10:5-12(t) (emphasis added). A member of a protected class is defined broadly as "*an employee* who has one or more characteristics" listed in Section 12(a). *Id.* Again, the NJLAD's definitions of "employee" and "employer"—and thus the NJEPA's use of these terms—are expansive and not limited to employees located in New Jersey. *See supra* Part I.A; N.J.S.A. § 10:5-5(f); N.J.S.A. § 10:5-5(e).

The NJEPA's statutory text further indicates its broad application beyond the borders of New Jersey in its instruction that inequitable pay rates are to be evaluated on a workforce-wide basis. Under the NJEPA, "Comparisons of wage rates shall be based on wage rates in *all* of an employer's operations or facilities." N.J.S.A. § 10:5-12(t) (emphasis added). This provision is not limited to an

employer's operations or facilities in New Jersey, and therefore further indicates the Legislature's intent to root out pay inequity across all of an NJLAD-subject employer's operations. The wider scope of the NJEPA is thus consistent with its specific purpose: to establish equal pay for "substantially similar work" as a wage floor for all employees of NJLAD-subject employers. *Id.*[4]

Dr. Schulman falls within the broad statutory categories of "an employee" with protected characteristics among "any of [Defendants'] employees." N.J.S.A. § 10:5-12(t). And she has pleaded facts sufficient to show that these NJLAD-subject companies, the New Jersey-headquartered Zoetis, Inc. and Zoetis Reference Labs, LLC (FAC ¶¶ 22, 23), paid her, a member of a protected class due to her gender (*id.* ¶¶ 12, 108), at a rate less than men who were doing the same jobs (*id.* ¶¶ 2, 3, 52–76), in violation of the NJEPA, *id.* ¶¶ 106–111; N.J.S.A. § 10:5-

---

[4] Defendants make much of a state Division on Civil Rights guidance document on the NJEPA, Defs.' Mem. at 14–16, but a Frequently Asked Questions document from an administrative agency—which only addresses one scenario where the NJEPA can apply to a worker who lives out-of-state—does not trump the clear text of the statute. What's more, the Attorney General has taken a "nuanced" approach in litigation that broadly aligns with Dr. Schulman's argument here. *Calabotta*, 460 N.J. Super. at 52 (Attorney General arguing NJEPA should apply to failure-to-promote claim of out-of-state employee of New Jersey company, and that record was too undeveloped to resolve whether NJEPA applied to employee's wrongful termination claim). Moreover, the cases relied upon in Defendants' brief for the proposition that "the LAD does not extend to employment outside of New Jersey" all pre-date *Calabotta*, *see* Defs.' Mem. at 10, and so do not constitute persuasive authority as to how New Jersey's highest court would decide these issues.

12(t). Accordingly, Dr. Schulman has plausibly alleged that the NJEPA applies to her.

### 2. Dr. Schulman Has Plausibly Alleged That New Jersey Has the Most Significant Relationship to Her Claims Under the NJEPA and Section 12(a).

Dr. Schulman has alleged sufficient facts, under this state's choice-of-law analysis, to show that New Jersey has the most significant relationship to both her claim under the NJEPA and her claim under Section 12(a). She has shown that "she is entitled, as a threshold matter, to the protection of the NJLAD" for both her claims. *Donovan*, 556 F. Supp. 3d at 233.

"[A] court presiding over an employment discrimination claim must apply New Jersey substantive law if New Jersey has the 'most significant relationship' to the matter in light of the factors set forth in the Restatement (Second) on Conflict of Laws." *Rampersad*, 2020 WL 529212, at *3. Sections 6, 145, and 146 of the Second Restatement provide the relevant factors to guide the court's analysis. *Calabotta*, 460 N.J. Super at 55–56. Importantly, at this point in the litigation, a plaintiff "need not allege chapter and verse of every choice-of-law factor, but rather, sufficient facts for the court to determine, at the dismissal stage, that the plaintiff may seek relief under the NJLAD." *Donovan*, 566 F. Supp. 3d at 233.

The Second Restatement's most-significant-relationship test is a "highly fact-specific inquiry that depends on the weighing of at least eleven factors."

*Rampersad*, 2020 WL 529212, at *4. Section 146 of the Second Restatement begins with the principle that, in ordinary, clear-cut tort cases, "the local law of the state where the injury occurred" applies "<u>unless,</u> with respect to the particular issue, some other state has a more significant relationship" to the matter. Second Restatement § 146 (emphasis added); *see also In re Accutane Litig.*, 235 N.J. 229, 259 (2018) ("That presumption may be overcome if 'some other state has a more significant relationship with the parties and the occurrence'[.]") (citation omitted).

Section 145 of the Second Restatement sets forth four significant state contacts in the context of this analysis:

> (a) the place where the injury occurred;
> (b) the place where the conduct causing the injury occurred;
> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties; and
> (d) the place where the relationship, if any, between the parties is centered.

Second Restatement § 145.

Section 6 provides several additional considerations:

> (a) the needs of the interstate and international systems;
> (b) the relevant policies of the forum;
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
> (d) the protection of justified expectations;
> (e) the basic policies underlying the particular field of law;
> (f) certainty, predictability and uniformity of result; and
> (g) ease in the determination and application of the law to be applied.

*Id.* § 6(2).

Applying the Second Restatement factors, Dr. Schulman's NJEPA and Section 12(a) claims must be allowed to proceed because she has presented facts that, taken as true, indicate that New Jersey has the most significant relationship to the discrimination that occurred.

Critically, Defendants are headquartered in New Jersey and Dr. Schulman has alleged facts that, taken as true, show that her employment relationship was centered in New Jersey and the conduct causing the injury occurred in New Jersey. *See Calabotta*, 460 N.J. Super. at 73 (a showing that the "company's decision to fire him was made or centered in New Jersey…would be a counterweight on the New Jersey side of the scale."). Zoetis has its headquarters, principal place of business, and executive offices in New Jersey. FAC ¶ 39. Plaintiff and her colleagues all worked under the same Vice President, Richard Goldstein, who was based in New Jersey. *Id.* ¶¶ 45, 51. And she and her colleagues were subject to personnel and pay decisions determined and/or approved centrally by Zoetis management, who were based in New Jersey. *Id.* ¶¶ 50–51.

Dr. Schulman "worked using equipment provided by Zoetis, including a computer, monitors, a microphone for dictation, a camera, and other computer accessories," that was shipped from New Jersey. *Id.* ¶ 40. *See Trevejo v. Legal Cost Control, Inc.*, No. A-1377-16T4, 2018 WL 1569640, at *2 (App. Div. Apr. 2, 2018) (allowing plaintiff's NJLAD claims to move forward to discovery where the

21

plaintiff alleged she was telecommuting from Massachusetts to New Jersey "through the use of the software connecting her, via a company supplied computer, to [the company's] network and her use of a company supplied telephone to conduct telephone conferences with other [company] employees").

In arguing for dismissal, Defendants place undue emphasis on where they believe the injury took place in this case—which they claim was New Hampshire, where Dr. Schulman lives. But Dr. Schulman reported to a virtual office and worked on a virtual team while working for her New Jersey-based employer. While Plaintiff may have *physically* been located in New Hampshire, describing New Hampshire as the place where her employment was "based" or as the place in which she was "employed" is a pre-Internet anachronism. And even if the injury could be said to have occurred in New Hampshire, that factor receives little weight here where that location is nothing more than happenstance that bears little relation to the parties' relationship. *See* Second Restatement § 145(2) cmt. (e).

It is not at all clear where the "place of injury" is when a New Jersey-based employer discriminates against a remote employee, particularly when it appears the company's discriminatory pay decisions were made in New Jersey by executives employed at the company's headquarters. In *Calabotta*, the court found that the "place of injury" could not be determined at the motion-to-dismiss stage, even though the plaintiff resided out of state when the alleged discrimination occurred.

*Calabotta*, 460 N.J. Super. at 71. The *Calabotta* plaintiff's factual allegations were sufficient to survive a motion to dismiss where his complaint stated that "the place where the discriminatory denial of the promotion occurred was New Jersey, although that locale is not conceded by defendants." *Id.*

Similarly, here, Dr. Schulman has alleged that the place where the discriminatory pay decisions were made appears to have been New Jersey, where Zoetis's headquarters are located and where the company's executive offices and decisionmakers are located. *See* FAC ¶ 39 ("Zoetis has its headquarters in New Jersey."); *id.* ¶ 41 ("[D]ecisions about Plaintiff's compensation were made centrally by Zoetis upper management executives, including Richard Goldstein, Lisa Lee, and Abhay Nayak, who were based in New Jersey."); *id.* ¶ 51 ("Dr. Schulman's pay was not determined by her manager Dr. David Gardiner, but was determined centrally by Zoetis management."); *id.* ("Dr. Schulman's pay…was determined and/or approved centrally by Zoetis management including Richard Goldstein, Lisa Lee, and Abhay Nayak, who were based in New Jersey."); *id.* ¶ 83 ("These executives, who have the final say on decisions regarding salaries for Zoetis Reference Lab[s], were based in New Jersey."). These facts are more than sufficient to plausibly allege that the core conduct described in the First Amended Complaint—discriminatory pay decisions made by Defendant that constitute

"unlawful employment practices" under the NJEPA and Section 12(a)—occurred in New Jersey.

Defendants' bald assertion that some of these allegations are "speculative"—presumably because they are made on information and belief—holds little weight in deciding this motion, especially as it fails to clarify or dispute any of the facts Dr. Schulman presents about these New Jersey connections, even though they undoubtedly know the answer to these questions. "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Greene v. BMW of N. Am.*, Civ. No. 2:11-04330, 2014 WL 47940, at *3 (D.N.J. Jan. 7, 2014) (quoting *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *see also* CHARLES A. WRIGHT AND ARTHUR R. MILLER, 5 FED. PRAC. & PROC. CIV. § 1224 (4th ed. 2022) ("Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible, even after the *Twombly* and *Iqbal* decisions."). At this point in the litigation, in the middle of discovery and prior to any depositions of Defendants' witnesses, Dr. Schulman has presented her allegations based on the information provided and

available to her. At a minimum, Dr. Schulman is entitled to complete discovery on these issues. *See* Part II, *infra*.

Even assuming *arguendo* that the place of Dr. Schulman's injury was New Hampshire, this fact is far from dispositive in the choice-of-law analysis.[5] While the place of injury may play a more important role in cases involving "personal injuries" or "injuries to tangible things" where "the injury occurred in a single, clearly ascertainable state," this factor is less important in other contexts like this one. Second Restatement § 145(2) cmt. (e). The place of injury "will not play an important role…when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue[.]" *Id.* That is the case here.

---

[5] Defendants' invocation of judicial estoppel to argue that Dr. Schulman should not be allowed to bring claims under the NJLAD solely because she filed a charge of discrimination with the New Hampshire Commission for Human Rights is completely without merit. Defs.' Mot. at 13. The Third Circuit applies judicial estoppel only in very narrow, specific circumstances that are not present here, where: (1) the party took "irreconcilably inconsistent" positions; (2) the party changed their position in bad faith or "in a culpable manner threatening to the court's authority"; and (3) "the use of judicial estoppel is tailored to address the affront to the court's authority and integrity." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001). There is nothing "irreconcilably inconsistent" about Dr. Schulman's conduct in filing a nonjudicial complaint at her local antidiscrimination agency and then later determining that she had claims under New Jersey law. *Id.* The Third Circuit's high bar for applying judicial estoppel is therefore inapplicable here.

Dr. Schulman only worked from New Hampshire because that is where she happened to live when she was hired by Zoetis, which employs pathologists who work remotely across the country. Zoetis does not operate an office in New Hampshire and there is no indication that Dr. Schulman's residence there played any role in Defendants' decision to hire her and subject her to discriminatory pay, or in any other relevant decision. Where she was located when she received her paychecks therefore "bears little relation to the occurrence" here and can be properly considered "fortuitous" because no matter where she resided she would have still suffered the exact same injury giving rise to this lawsuit. *See id.*

When the place of injury is unclear or unimportant, like here, "the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law." *Id.*; *see Hayden v. Hartford Life Ins. Co.*, Civ. A. No. 10-3424 (GEB), 2010 WL 5140015, at *4 (D.N.J. Dec. 9, 2010) ("[W]here a corporation's discriminatory conduct occurs in New Jersey, even if the employee is employed elsewhere, New Jersey law applies.") (citing *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516 (1993)). *See generally Calabotta*, 460 N.J. Super. at 74 (recognizing that the "office" where an individual works can be an elusive or non-existent concept these days," and that "[w]ork is now conducted often via digital means transcending jurisdictional boundaries."). To the extent that the team's work—and Defendants' illegal conduct setting the team's pay—could

be said to be connected to any one state, it was New Jersey, as the team's pay and personnel decisions were made by management in New Jersey.

Next, there are important policy reasons for applying the NJLAD and NJEPA to New Jersey companies that, from their offices in New Jersey, make discriminatory employment decisions about their remote workforce. Defendants argue that because Dr. Schulman's direct supervisors, HR contact, and even physical lab specimens were purportedly in other states, including Virginia, Kentucky, Iowa, and Utah, that must mean the employment relationship was "centered in New Hampshire." Defs.' Mem. at 28. If anything, the fact that employees work from different locations across the country weighs in favor of uniformly applying New Jersey law instead of subjecting Defendants to the law of whichever state the employee happens to be in, or their direct supervisor happens to be in, or their HR representative happens to be in, or where the physical specimens the employee is remotely analyzing are.[6] *See Calabotta*, 460 N.J. Super. at 70-71 (holding that applying the NJLAD to employment decisions made in New Jersey, regardless of the plaintiff's residence, best promoted "certainty, predictability, and uniformity" and "needs of the interstate . . . systems"); Second Restatement § 6(2)(f) (requiring courts to consider "certainty, predictability and

---

[6] Defendants' argument that several other states besides New Jersey and New Hampshire may be involved in this dispute underscores the need, at minimum, for continued factual development through discovery.

27

uniformity of result"); *id.* § 6(2)(g) ("ease in the determination and application of the law to be applied").

Finally, the NJEPA and Section 12(a) should be applied to Dr. Schulman's case because doing so furthers the statute's broad remedial goals of eradicating discrimination and deterring New Jersey companies from discriminating against their employees—a factor that weighs strongly in favor of applying the NJLAD. Second Restatement § 6(b) ("the relevant policies of the forum"); *Id* § 6(e) ("the basic policies underlying the particular field of law"). *See* Part I.A., *supra*; *Meade*, 249 N.J. at 327 (NJLAD was enacted with the goal of "nothing less than the eradication of the cancer of discrimination") (citations omitted); *Nini*, 202 N.J. at 108–09 ("[T]he more broadly [the NJLAD] is applied the greater its antidiscriminatory impact.") (citations omitted). As the Second Restatement makes clear, "[i]f the purposes sought to be achieved by a local statute or common law rule would be furthered by its application to out-of-state facts, this is a weighty reason why such application should be made." Second Restatement § 6 cmt. e.

Taken together, the well-pleaded facts Dr. Schulman alleges in her Complaint, assumed to be true for the purposes of this motion, plausibly allege that New Jersey has the strongest connection to this case.[7] The highly fact-dependent

---

[7] Again, on a motion to dismiss, the Court need not definitively conclude that New Jersey has the strongest connection to this case; the Court need only find that

inquiry required by New Jersey's choice-of-law rules and the Second Restatement factors belies Defendant's contention that the state of Dr. Schulman's residence bars her from the NJLAD's coverage.

As noted above, Dr. Schulman has pleaded facts sufficient to show that NJLAD-subject companies, the New Jersey-headquartered Zoetis, Inc. and Zoetis Reference Labs, LLC (FAC ¶¶ 22, 23), paid her, one of its employees who is a member of a protected class due to her gender (*id.* ¶¶ 12, 108), at a rate less than men who were doing the same jobs (*id.* ¶¶ 2, 3, 52–76), and appear to have made these discriminatory pay decisions in New Jersey (*see id.* ¶¶ 41, 51, 83). Dr. Schulman has therefore sufficiently alleged that Defendant violated the NJEPA, *id.* ¶¶ 106–111, and that Defendant discriminated against her with respect to her compensation based on her sex, in violation of Section 12(a). *Id.* ¶¶ 111–117.

Accordingly, Dr. Schulman has plausibly alleged that she is entitled to relief under the NJEPA and Section 12(a), and Defendant's motion to dismiss Dr. Schulman's NJEPA and Section 12(a) Causes of Action must be denied.

---

Plaintiff has alleged sufficient facts to *plausibly allege* that New Jersey has the strongest connection to this case. *See Donovan*, 566 F. Supp. 3d at 233 ("[T]o survive a motion to dismiss under Rule 12(b)(6), an out-of-state plaintiff must *allege* that New Jersey has the most significant relationship to his claim . . . . [T]he plaintiff need not allege chapter and verse of every choice-of-law factor, but rather, sufficient facts for the court to determine, at the dismissal stage, that the plaintiff may seek relief under the NJLAD. To be clear, this does not preclude a defendant from disputing these allegations at a later stage of the litigation.") (emphasis added) (citations omitted).

## II.     Further Discovery Is Needed to Definitively Resolve the Choice-of-Law Question.

Defendants' motion should also be denied because only limited discovery has taken place on the questions at issue, making it inappropriate to dismiss Dr. Schulman's New Jersey claims at this stage of the litigation. "Because [the choice-of-law] analysis is fact intensive, it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage when little or no discovery has taken place." *Buckley v. Power Windows & Sidings, Inc*., Civ. A. No. 09-3162 (JAP), 2010 WL 3981978, at *3 (D. N.J. 2010); *see also Rampersad*, 2020 WL 529212, at *4 (finding that a "more fully developed factual record is necessary to determine whether the *Calabotta* choice-of-law principles justify applying the NJLAD to Plaintiff's claims."). Even if the Court is not yet convinced that Dr. Schulman has alleged sufficient facts to *definitively* show she is entitled to relief under the NJEPA and Section 12(a), she has alleged sufficient facts to plausibly show that entitlement to relief, and thus should be allowed to complete discovery so that this question may be determined at a later time on a more fully developed record.

Further discovery, and particularly depositions, will undoubtedly reveal information to clarify any outstanding questions, as Defendants are still the primary holder of evidence pertinent to this analysis, including information about precisely how and where the discrimination against Dr. Schulman occurred.

30

Defendants should not be allowed to simultaneously claim that Dr. Schulman's claims are too "speculative" while also escaping further discovery that could easily prove the veracity of her allegations. Thus, the Court should deny this motion to dismiss and permit discovery on the issue to be concluded.

### III. Defendants' Motion Improperly Relies on Facts and Documents Beyond the Complaint, Which the Court Should Ignore.

Defendants' improper reliance on facts and documents beyond the Complaint is yet another reason that Defendants' motion to dismiss must be denied. A district court ruling on a motion to dismiss "generally may not consider matters extraneous to the pleadings" unless the documents are "*integral to* or *explicitly relied* upon in the complaint." *Red Hawk Fire & Sec.,* 449 F. Supp. 3d at 461 (citing *In re Burlington*, 114 F.3d at 1426) (emphasis added). The affidavits and other documents Defendants attempt to offer this Court do not fall within any of these limited categories and should not be considered on a motion to dismiss.

Consideration of the statements made in the two declarations that Defendants submitted would be wholly improper, as those affidavits are obviously neither referenced nor relied upon in the Complaint, nor are they integral to Plaintiff's claims. *See Schmidt v. Skolas,* 770 F.3d 241, 250 (3d Cir. 2014) ("[A]n affidavit from a defendant may not be considered in deciding a motion to

31

dismiss.") (citation omitted). Defendants improperly rely on these declarations to bolster their flawed motion.[8] *See* Defs.' Mem. at 4–6, 12, 24, 28.

Defendants attempt to use these improper declarations to put documents before the Court that are neither referenced nor relied upon in the Complaint, and which are not integral to Plaintiff's claims.[9] For example, the declaration of Ivelisse Williams is used to introduce employment forms which are then cited as facts in Defendants' memorandum—despite the fact that neither of these documents are relied upon nor referenced in the Complaint. *See* Cert. of I. Williams, ECF No. 62-4, Exs. A & B.

---

[8] Defendants cite *Bausch Health Ir. Ltd. v. Mylan Labs.*, No. 21-10403 (SRC)(JSA), 2022 WL 683084, (D.N.J. Mar. 8, 2022), implying in a parenthetical that the court in that case considered a "certification submitted by the defendant in support of a motion to dismiss because it was 'integral to' and 'explicitly relied upon' in the plaintiff's complaint." Defs.' Mem. at 4 n.4. But the "certifications" considered by the court in that case were a "paragraph IV certification" submitted pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), and a "paragraph III certification" submitted pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(III), that the plaintiffs alleged were submitted as part of a Food and Drug Administration drug approval process—not declarations from witnesses characterized as "certifications"—and, which it appears, the plaintiffs in that case did not attach to their Complaint. *See Bausch Health Ir. Ltd.*, 2022 WL 683084, at *1–2 & n.2.

[9] Plaintiff raised these same concerns with Defendants' improper use of these declarations in response to Defendant Zoetis Inc.'s original motion to dismiss. Rather than address why it feels declarations and documents that are clearly beyond the scope of the pleadings should be considered, however, Defendants have chosen to simply reattach the improper declarations, and to additionally cite an excerpt from Plaintiff's deposition.

Similarly, Defendants use the improper (and undated) declaration of David Gardiner to introduce an offer letter, *see* Cert. of D. Gardiner, ECF No. 62-5, Ex. A, despite the fact that Dr. Schulman's Complaint neither "explicitly relied" on the offer letter, nor was the offer letter "integral to" the Complaint. *In Re Burlington*, 114 F.3d at 1426. Defendants' only argument on this point (in a footnote) is the incorrect assertion that the Complaint references the offer letter in "paragraphs 31-33." Defs.' Mem. at 4 n.4. But the offer letter submitted by Defendants simply serves as evidence of some of the terms of Plaintiff's job offer. Paragraphs 31 to 33 of the Complaint provide only general information about the job offer extended to Plaintiff and does not even mention a letter. *See* FAC ¶¶ 31–33. Additionally, that Paragraph 32 of the Complaint highlights terms that were not stated in the offer letter further shows that Plaintiff was not describing the specific letter Defendants sent her, but the terms of the overall job offer. *See* FAC ¶ 32. Plaintiff's disclosure of general contextual information regarding her employment offer should therefore not be construed as "unambiguous reference" to her offer letter from Zoetis.[10] *See In Re Burlington*, 114 F.3d at 1426.

---

[10] Nor could the offer letter be said to be "integral to" Dr. Schulman's claims—i.e., Plaintiff's claims are not "based on" the offer letter. *See In re Burlington*, 114 F.3d at 1426 (finding plaintiff's claims unquestionably arose from data in a document it failed to attach or explicitly cite). Dr. Schulman's claims are based on Defendants' decision to pay her less than men doing the same job, in violation of federal and New Jersey law, not the offer letter.

While the offer letter submitted by Defendants is not dispositive of any of the issues this motion presents, Dr. Schulman must be provided the opportunity to conduct further discovery regarding this letter—including by deposing the letter's signatory, David Gardiner—before this Court may consider any limited group of select and self-serving extraneous documents.[11] Such documentation should be evaluated during discovery, not offered improperly on a motion to dismiss, where Plaintiff has not had an opportunity to depose the declarants or discover countering evidence. Fundamental fairness requires that this motion not be decided on the basis of one-sided documents.

Finally, Defendants have attempted to selectively cite Plaintiff's deposition in support of their motion. *See* Defs.' Mem. at 28 n.13. This is wholly improper on a motion to dismiss. *See Romero v. Allstate Ins. Co.*, 170 F. Supp. 3d 779, 786 (E.D. Pa. 2016) ("To acknowledge such testimony would have required the Court to go beyond the four corners of the pleadings, which is not permitted on a motion

---

[11] Even if the Court were to conclude that Dr. Schulman's Complaint does reference the offer letter, that document is not dispositive of the choice-of-law analysis for Plaintiff's New Jersey claims. In addition, this motion to dismiss should not be converted to a motion for summary judgment in light of the very early stage of this case, as there has been no initial conference and no discovery, and thus Dr. Schulman would have no opportunity to access documents or testimony she may need to rebut Defendants' position. *See Kurdyla v. Pinkerton Sec.,* 197 F.R.D. 128, 131 (D.N.J. 2000) ("A court should not convert a motion…when little or no discovery has occurred.").

to dismiss."). And it is particularly improper where, as here, Plaintiff has not yet had the opportunity to conduct her own depositions of Defendants' witnesses.

Defendants do not even attempt to offer a colorable reason why the Court should consider Plaintiff's testimony at this juncture. That said, to be clear, Plaintiff's deposition does not in any way suggest that Plaintiff's allegation that Plaintiff's pay was "determined and/or approved centrally by Zoetis management" was based on pure speculation, as Defendants contend. In fact, Plaintiff's testimony establishes that her allegation was well-founded.

For all of these reasons, the Court should exclude all additional materials submitted by Defendants, including the declarations and the exhibits attached to them and the deposition testimony, in considering this motion.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' motion to dismiss Dr. Schulman's New Jersey claims in its entirety.

Dated:      Red Bank, New Jersey
            May 22, 2023

                              /s/ Julie Salwen
                              Julie Salwen
                              David Harrison
                              Harrison, Harrison & Associates, Ltd.
                              110 Highway 35, Suite #10
                              Red Bank, NJ 07701
                              (718) 799-9111
                              jsalwen@nynjemploymentlaw.com
                              dharrison@nynjemploymentlaw.com

*Local Counsel for Plaintiff*

Hugh Baran (he/him)
Patricia Kakalec (she/her)
Kakalec Law PLLC[12]
195 Montague Street, 14th Floor
Brooklyn, NY 11201
(212) 705-8730
Hugh@KakalecLaw.com
Patricia@KakalecLaw.com

*Attorneys for Plaintiff*


Rachel Smith (she/her)
Sunu Chandy (she/her)
Gaylynn Burroughs (she/her)
Emily Martin (she/her)
National Women's Law Center
11 Dupont Circle NW, Suite 800
Washington, DC 20036
(202) 588-5180
rsmith@nwlc.org
schandy@nwlc.org
gburroughs@nwlc.org
emartin@nwlc.org

*Attorneys for Plaintiff*

---

[12] Kakalec Law PLLC recognizes the substantial contributions to this brief of its Summer 2022 Vanderbilt Law School student intern Nirali Vyas.