## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRANCES YVONNE SCHULMAN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:22-cv-01351 |
| | : | |
| vs. | : | |
| | : | Return date: <u>June 2, 2023</u> |
| ZOETIS, INC. and ZOETIS | : | |
| REFERENCE LABS, LLC, | : | |
| | : | |
| | : | |
| Defendants. | : | |

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER <u>FED. R. CIV. P.</u> 12(b)(6)

---

JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
Attorneys for Defendants

Of counsel and on the brief:
    Richard J. Cino, Esq.
    Robert J. Cino, Esq.

On the brief:
    Linda J. Posluszny, Esq.
    Cody C. Hubbs, Esq.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...........................................................................................ii

PRELIMINARY STATEMENT ....................................................................................1

LEGAL ARGUMENT....................................................................................................4

POINT I .........................................................................................................................4

      AS PLAINTIFF IS A RESIDENT OF AND WORKED FOR THE
      ENTIRETY OF HER EMPLOYMENT IN NEW HAMPSHIRE,
      THE NEW JERSEY LAW AGAINST DISCRIMINATION,
      INCLUDING THE EQUAL PAY ACT, DOES NOT APPLY TO
      THIS ACTION................................................................................................4

POINT II .......................................................................................................................8

      PLAINTIFF CANNOT PURSUE HER CLAIMS UNDER NEW
      JERSEY LAW BECAUSE NEW HAMPSHIRE HAS THE MOST
      SIGNIFICANT RELATIONSHIP TO THIS DISPUTE. ...................................8

POINT III.......................................................................................................................14

      FURTHER DISCOVERY IS NOT WARRANTED WHERE, AS
      HERE, NEW JERSEY LAW CLEARLY DOES NOT APPLY TO
      PLAINTIFF'S CLAIMS..................................................................................14

CONCLUSION...............................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Advanced Oral Techs., L.L.C v. Nutrex Research, Inc.,
    2011 U.S. Dist. LEXIS 28625 (D.N.J. 2011) ..........................................................................11

Albert v. DRS Techs., Inc.,
    2011 U.S. Dist. LEXIS 55320 (D.N.J. 2011) ..........................................................................12

Bethea v. Merchants Commercial Bank,
    2011 U.S. Dist. LEXIS 118570 (D.V.I. 2011).........................................................................13

Brunner v. AlliedSignal, Inc.,
    198 F.R.D. 612 (D.N.J. 2001).................................................................................................9

In re Burlington Coat Factory Sec. Litig.,
    114 F.3d 1410 (3d Cir. 1997).................................................................................................13

Burns v. Lavender Hill Herb Farm, Inc.,
    167 F. App'x 891 (3d Cir. 2006) ............................................................................................15

Calabotta v. Phibro Animal Health Corp.,
    460 N.J. Super. 38 (App. Div. 2019) .............................................................1, 2, 6, 7, 10, 14

Cassidy v. Med. Diagnostic Labs., LLC,
    2018 U.S. Dist. LEXIS 205674 (W.D. Mo. 2018)....................................................................5

Clorox Co. v. Proctor & Gamble Commercial Co.,
    228 F.3d 24 (3d Cir. 2000).....................................................................................................16

Diana v. AEX Group,
    2011 U.S. Dist. LEXIS 100928 (D.N.J. 2011) .........................................................................8

Donovan v. W.R. Berkeley Corp., et al.,
    566 F. Supp. 3d 224 (D.N.J. 2021) ........................................................................................12

Dymnioski v. Crown Equip Corp.,
    2012 U.S. Dist. LEXIS 76955 (D.N.J. 2012) .........................................................................15

Giovanelli v. D. Simmons Gen. Contracting,
    2010 U.S. Dist. LEXIS 23685 (D.N.J. 2010) .........................................................................15

Hayden v. Hartford Life Insurance Company,
    2010 U.S. Dist. LEXIS 130079 (D.N.J. 2010) .......................................................................13

Herrera v. Goya Foods, Inc.,
    2022 U.S. Dist. LEXIS 206985 (D.N.J. 2022) ....................................................6, 7

Jubelt v. United Mortg. Bankers, Ltd.,
    2015 U.S. Dist. LEXIS 84595 (D.N.J. 2015) .........................................................11

Keita v. Delta Cmty. Supports, Inc.,
    2020 U.S. Dist. LEXIS 110550 (E.D. Pa. 2020) ...................................................11

Maniscalco v. Brother Int'l (Usa) Corp.,
    709 F.3d 202 (3d Cir. 2013)....................................................................................9

McDonnell v. State of Illinois,
    319 N.J. Super. 324 (App. Div. 1999) ....................................................................5

Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,
    163 F.3d 449 (7th Cir. 1988) ................................................................................16

Peikin v. Kimmel Silverman, P.C.,
    576 F. Supp. 2d 654 (D.N.J. 2008) .......................................................................13

Piscopo v. Public Serv. Elec. & Gas Co.,
    2015 U.S. Dist. LEXIS 82982 (D.N.J. 2015) .......................................................11

Plastipak Packaging, Inc. v. DePasquale,
    363 F. App'x 188 (3d Cir. 2010) ..........................................................................15

In re Public Service,
    167 N.J. 377 (2001) ................................................................................................6

Satz v. Taipina,
    2003 U.S. Dist. LEXIS 27237 (D.N.J. 2003) ..........................................5, 6, 9, 10

Schneider v. Sumitomo Corp. of America,
    2010 U.S. Dist. LEXIS 59101 (D.N.J. 2010) ...................................................5, 12

Smith v. Lindemann,
    2011 U.S. Dist. LEXIS 82680, 2011 U.S. Dist. LEXIS 82680 (D.N.J. 2011) .......16

South Jersey Gas Co. v. Mueller Co.,
    2012 U.S. Dist. LEXIS 200577 (D.N.J 2012) .......................................................16

Trevejo v. Legal Cost Control, Inc.,
    2018 N.J. Super. Unpub. LEXIS 727 (App. Div. 2018)....................................9, 10

Walters v. Safelite Fulfillment, Inc.,
    2019 U.S. Dist. LEXIS 52355 (D.N.J. 2019) ........................................8, 10, 11, 12

Weinberg v. Interep Corp.,
    2006 U.S. Dist. LEXIS 23746 (D.N.J. 2006) ...........................................................................7

**Statutes**

Diane B. Allen Act ("N.J. EPA"),
    N.J.S.A. § 10:5-12(t) ................................................................................1, 4, 5, 6, 14

New Jersey Law Against Discrimination ("NJLAD"),
    N.J.S.A. § 10:5-1 et seq. ........................................1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12

**PRELIMINARY STATEMENT**

Plaintiff has failed to establish that the New Jersey Law Against Discrimination ("NJLAD") applies to the claims asserted in her Complaint, which stem from her employment in New Hampshire.  Plaintiff's opposition papers fail to point to <u>any</u> allegations in the Amended Complaint to establish Plaintiff was hired to work in New Jersey, or that she performed any work in New Jersey, while employed by Defendant Zoetis Reference Labs, LLC ( "Zoetis Reference Labs") (collectively, with Zoetis, Inc., "Defendants").[1] Thus, Plaintiff's claims for violation of the equal pay provisions of the NJLAD, as amended by the Diane B. Allen Act, N.J.S.A. § 10:5-12(t) ("N.J. EPA"), and violation of the gender discrimination provisions of the NJLAD (Counts III and IV) must be dismissed, with prejudice, as a matter of law.

In an effort to manufacture a connection to New Jersey, Plaintiff, in her opposition, coins the phrase "NJLAD-subject employer" and urges this Court to recognize, for the first time, that the NJLAD extends to ***any*** employee located ***anywhere in the world***, so long as the employer has at least one employee, facility, or operation within the State of New Jersey.  To be clear, the term "NJLAD-subject employer" does not appear in the statute itself. This interpretation improperly places the focus on the employer, rather than the employee, and runs counter to the established case law, agency decisions, and interpretive guidance cited herein and in Defendants' moving papers.  Plaintiff's subjective interpretation would also run counter to the decision in <u>Calabotta v.</u> <u>Phibro Animal Health Corp.</u>, 460 N.J. Super. 38, 45 (App. Div. 2019), which is the primary case cited to in her opposition papers.  That is, there would be no need to undertake the "most significant relationship" analysis employed by the <u>Calabotta</u> court, because any employee of any employer

---

[1] As noted in Defendants' moving papers, Zoetis, Inc is not a proper party as Zoetis Reference Labs, LLC was, at all times relevant to the Amended Complaint, Plaintiff's employer.  In her opposition, Plaintiff argues that Zoetis, Inc. conceded this point by filing a position statement in response to Plaintiff's Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC").  Applying this logic, Plaintiff should be precluded from asserting NJLAD claims for the sole reason that the Charge asserted claims under the New Hampshire Law Against Discrimination, not the NJLAD.

with any operations in New Jersey would be *per se* covered by the LAD (including the employer in <u>Calabotta</u>). Plaintiff's interpretation of the NJLAD is wholly unsupported by <u>Calabotta</u>, which makes clear the NJLAD can only extend extraterritorially under "appropriate circumstances," not present here. <u>Calabotta</u> does not stand for the proposition that as long as an employer falls under the purview of the NJLAD, any of its employees, regardless of geographic location are entitled to bring claims under the NJLAD.

Applying the most significant relationship test, as the Court did in <u>Calabotta</u>, it is clear New Hampshire law, not New Jersey law, applies to Plaintiff's employment claims.   Setting aside the allegations pled in the Amended Complaint based solely "on information and belief," the only allegation with any connection to New Jersey is that Zoetis, Inc.'s headquarters is in the state.  This lone allegation, without more, does not warrant application of New Jersey law to Plaintiff's claims. Nor does it serve as a basis for further discovery, particularly in light of Plaintiff's allegations in her Amended Complaint that support application of New Hampshire law: at all relevant times, Plaintiff was and remains a resident of New Hampshire, not New Jersey; at all relevant times, Plaintiff was employed by Zoetis Reference Labs to work from her home in New Hampshire, not New Jersey; at all relevant times, Plaintiff's pay was issued to her in New Hampshire and subject to tax withholdings consistent with New Hampshire law, not New Jersey law; Plaintiff's direct supervisors during her employment were Dr. David Gardiner and Mark Ackermann, who worked in Utah and Iowa, respectively, not New Jersey; Plaintiff's work was performed in New Hampshire and returned to a laboratory in Louisville, Kentucky, not New Jersey; and Plaintiff's employment with Zoetis Reference Labs ended pursuant to her voluntary resignation in New Hampshire, not New Jersey.

For these reasons, as well as those set forth in Defendants' moving papers, Plaintiff's claims for violation of the equal pay and gender discrimination provisions of the NJLAD should be dismissed, with prejudice, as a matter of law.

## LEGAL ARGUMENT

## POINT I

## AS PLAINTIFF IS A RESIDENT OF AND WORKED FOR THE ENTIRETY OF HER EMPLOYMENT IN NEW HAMPSHIRE, THE NEW JERSEY LAW AGAINST DISCRIMINATION, INCLUDING THE EQUAL PAY ACT, DOES NOT APPLY TO THIS ACTION.

Plaintiff improperly urges this Court to extend the NJLAD, including the N.J. EPA, to "any" employee of a "NJLAD-subject employer." (Plaintiff's Opposition Brief ("Pl's Br."), at pp. 8-19).  Importantly, the NJLAD does not include the term or define an "NJLAD-subject employer."  Plaintiff nevertheless argues that *any* employee located *anywhere in the world* could bring a claim under the NJLAD, so long as the employer had at least one employee, facility, or operation within the State of New Jersey. However, "NJLAD-subject employer" is a term not in the NJLAD.  Rather, it is concocted by Plaintiff, who cites to no case law defining or discussing "NJLAD-subject employer."  Indeed, as noted infra, the focus of the NJLAD is on the employee, **not** the employer.  Plaintiff's subjective interpretation of the statute is wholly unsupported and, in fact, contradicted by case law, agency decisions, and interpretive guidance.

As noted in Defendants' moving papers, the Diane B. Allen Equal Pay Act, which took effect on July 1, 2018, is an amendment to the NJLAD. The Division on Civil Rights ("DCR") is the agency charged with interpretation and enforcement of the NJLAD, and, by extension, the N.J. EPA, in New Jersey. According to the DCR's Guidance with respect to the N.J. EPA,[2] "[e]mployees can bring a claim under the Equal Pay Act *as long as they have a primary place of work in New Jersey*." This Guidance does not support Plaintiff's subjective interpretation of the statute as it is undisputed Plaintiff did not "have a primary place of work in New Jersey." Thus,

---

[2] A copy of this guidance is available at https://www.nj.gov/oag/dcr/downloads/030220-Equal-Pay-Act-Guidance-Appendices-Only.pdf (last visited May 23, 2023).

Plaintiff's opposition downplays the significance of this Guidance by relegating it to a footnote and reiterating her erroneous, subjective interpretation on the reach of the N.J. EPA. (Pl's Br., at p. 18 n.4).

Importantly, while the N.J. EPA itself is in its infancy, the NJLAD has a long history of interpretive case law. When presented with the question of whether the NJLAD extends to employees outside New Jersey, reviewing courts focus on the ***employee's*** relationship to New Jersey, not on an employer's location. See Schneider v. Sumitomo Corp. of America, 2010 U.S. Dist. LEXIS 59101, at *5-7 (D.N.J. 2010) (noting that, "although a number of factors are considered to determine which state's law applies, the most critical factor is the location where the employee works."); see also McDonnell v. State of Illinois, 319 N.J. Super. 324, 340-41 (App. Div. 1999) (finding that where a New Jersey resident worked for the state of Illinois in an office in New Jersey, New Jersey law applied); Satz v. Taipina, 2003 U.S. Dist. LEXIS 27237, at *45-52 (D.N.J. 2003), aff'd, 122 Fed. Appx. 598 (3d Cir. 2005) (finding the plaintiff, who was employed exclusively in Pennsylvania and Delaware by defendants who had offices in New Jersey, may not pursue claims against defendants under the NJLAD); Cassidy v. Med. Diagnostic Labs., LLC, 2018 U.S. Dist. LEXIS 205674 (W.D. Mo. 2018) (granting the defendant's motion to dismiss the plaintiff's NJLAD claims where the defendant's headquarters was in New Jersey, but the plaintiff lived in Missouri, did not allege in the complaint that she ever worked in New Jersey, and was responsible for accounts in Kansas, Missouri, and, later, Oklahoma).

Indeed, the Satz court explained this long-standing emphasis on the employee:

> Employment cases which straddle state lines can involve several different states, including the state of the employee's residence, the state where the employee works, the state where the employer's headquarters is located, the state where the employer does business, and the state where the alleged discrimination occurred. Generally, though, regardless of the number of states involved, **New Jersey courts have applied the law of the state where the employee works to claims of workplace discrimination**.

5

2003 U.S. Dist. LEXIS 27237, at *44-45 (D.N.J. 2003) (emphasis added).  Contrary to Plaintiff's

erroneous argument (see Pl.'s Br., at p. 18, n.4), this position is further supported (not contradicted)

by Calabotta, which found that the NJLAD *may* extend its protections to the plaintiff, an Illinois

resident, who asserted claims based on the denial of a promotion to a position in New Jersey.  The

Calabotta decision focused on the plaintiff's prospective employment in New Jersey in reaching

its decision, not on the employer's location, and employed a choice of law analysis to determine

whether the NJLAD applied to the plaintiff's claims. Id.  Plaintiff's subjective interpretation of the

NJLAD, would essentially render Calabotta moot as there would be no reason to ever conduct a

most significant relationship analysis so long as an employer had at least one employee, facility,

or operation within the State of New Jersey.  Therefore, in this instance, this Court should afford

appropriate deference to the DCR.[3]

Additionally, Plaintiff's reliance on Herrera v. Goya Foods, Inc., No. 21-11628-ES-AME,

2022 U.S. Dist. LEXIS 206985 (D.N.J. Nov. 14, 2022) is mistaken. (See Pl.'s Br., at pp. 13-14).

First, this decision is unpublished, and as such, is not persuasive authority.  Further, Plaintiff

misconstrues the facts and holding in Herrera by arguing it held "that a remote worker employed

by a New Jersey-headquartered employer could maintain a claim under the NJLAD against her

employer[.]"  (See Pl.'s Br., at p. 13). The Court in Herrera considered several factors, including

that the decision to terminate the plaintiff's employment was made in New Jersey and that the

---

[3] The New Jersey Department of Labor & Workforce Development ("NJDOL") further reinforces the DCR's Guidance by instructing employers who provide "qualifying services" to report on "employees who are performing work in New Jersey." See Instructions for Completing the Payroll Certification for Public Work Projects (form MW-352) and Annual Equal Pay Report for Qualifying Services (form MW-353) ("Instructions"), https://www.nj.gov/labor/wageandhour/assets/PDFs/MW-564%20(3-19)%20Instructions.pdf (last visited July 19, 2022).  The Instructions issued by the NJDOL specifically provide that it does not matter where the "employer" is located.  Indeed, according to the Instructions, "[a]ny employer, **regardless of location**, who enters into a contract with a public body to provide qualifying services or perform public work" must file a report. (emphasis added). Thus, much like the interpretive case law on the reach of the LAD, the NJDOL focuses on the location of the employee. Absent any authority to the contrary (which there is none), this Court should afford appropriate deference to the DCR's Guidance, as the governing body charged with interpretation and enforcement of the N.J. EPA. In re Public Service, 167 N.J. 377, 383-84 (2001).

parties entered into a Broker Agreement which governed the plaintiff's employment, which explicitly stated New Jersey law would govern the relationship, when determining that New Jersey law should apply. <u>Herrera</u>, 2022 U.S. Dist. LEXIS 206985, at *16-17.

The facts here are clearly distinguishable. Plaintiff did not enter into any agreement with Defendants which stated her employment would be governed by the laws of New Jersey, nor does Plaintiff allege that her employment was terminated. Thus, unlike in <u>Herrera</u>, Plaintiff's purported "injury" in this case was the initial pay decision made when she commenced her employment with Defendants. As set forth in Defendants' moving papers, Plaintiff's former supervisor, Dr. David Gardiner, made the decision to hire Plaintiff and had final decision-making authority regarding Plaintiff's starting salary. (<u>See</u> D.E. No. 62-5, Certification of David Gardiner in Support of Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint ("Gardiner Cert."), ¶¶ 4-5). Dr. Gardiner is and always has been based in Salt Lake City, Utah, not New Jersey. Accordingly, unlike in <u>Herrera</u>, Plaintiff fails to plead sufficient allegations here to permit her to maintain employment claims under New Jersey law.

Plaintiff's interpretation of the statute would also "bulldoze" the employment laws enacted by other states to protect individuals employed within their borders. Under Plaintiff's theory, if an employer has at least one employee in New Jersey, then New Jersey law would supersede the employment laws of any state where any employees work and/or reside. This position has been expressly rejected by New Jersey courts. As noted in <u>Calabotta</u>, <u>supra</u>, 460 N.J. Super. at 66, application of choice of law principles is meant to "promote interstate comity and due respect for the laws and interests of sister states, rather than automatically impose New Jersey law in some provincial or overly aggressive fashion.… We do not construe the NJLAD to bulldoze over the conflicting laws of other states that also have a nexus to the case." <u>See also</u> <u>Weinberg v. Interep Corp.</u>, 2006 U.S. Dist. LEXIS 23746 (D.N.J. 2006), at *22 (D.N.J. 2006) ("Looking to the state of

employment ensures that the law in the jurisdiction with the strongest interest in the outcome of the litigation controls.").

Finally, this Court should not permit Plaintiff to advance her subjective interpretation of the NJLAD by recitation of its broad remedial purposes. These types of public policy arguments have been routinely rejected by this Court. See Walters v. Safelite Fulfillment, Inc., 2019 U.S. Dist. LEXIS 52355, at *10 (D.N.J. 2019) (rejecting the plaintiff's argument that he should be permitted to pursue a NJLAD claim because "New Jersey has a strong interest in eradicating the cancer of discrimination in its state" where the plaintiff, a store manager in Connecticut, did not allege he had any work responsibilities in New Jersey); see also Diana v. AEX Group, 2011 U.S. Dist. LEXIS 100928, at *7-8 (D.N.J. 2011) (rejecting plaintiff's appeal to public policy and reasoning that "law of the state of the employee's workplace applies to claims arising from his employment because the state has an unusually strong interest in applying its own law to employment contracts involving work in [its] state"). Thus, Plaintiff's interpretation of the NJLAD contradicts decades of binding legal precedent and should be rejected by this Court.

## POINT II

### PLAINTIFF CANNOT PURSUE HER CLAIMS UNDER NEW JERSEY LAW BECAUSE NEW HAMPSHIRE HAS THE MOST SIGNIFICANT RELATIONSHIP TO THIS DISPUTE.

As acknowledged by both parties, an actual conflict exists between the applicable New Hampshire and New Jersey discrimination laws, including the respective Equal Pay Acts.[4] While Plaintiff correctly notes the next step is a choice of law analysis to determine which state has the most significant relationship to the dispute, Plaintiff fails to correctly apply the relevant factors set

---

[4] Plaintiff's brief concedes there is a conflict between the New Jersey and New Hampshire laws. (See Pl's Br., at p. 15, n.3).

forth in Section 6, 145, and 146 of the Second Restatement.  As set forth in detail in Defendants'
moving papers, New Hampshire has the most significant relationship to this dispute.

In her opposition brief, Plaintiff repeats and restates the same three allegations—that
Zoetis, Inc. is based in New Jersey (not dispositive), that she believes her computer shipped from
New Jersey (speculative and irrelevant), and that she believes – but does not point to any facts to
support – compensation decisions were made in New Jersey (speculative and vague). (Pl's Br., at
pp. 19-29).  As an initial matter, it is well-established the location of a company's headquarters
does not warrant application of New Jersey law.  See Defendants' moving brief, at pp. 10-12; see
also Maniscalco v. Brother Int'l (Usa) Corp., 709 F.3d 202, 208 (3d Cir. 2013) ("[T]he Third
Circuit has held that the 'fortuitous location' of a Defendant's New Jersey headquarters alone 'does
not warrant applying New Jersey law.'… In so holding, the Third Circuit noted that its decision
aligned with 'the overwhelming majority of courts' application of New Jersey choice-of-law rules
under similar circumstances.'"); Satz, 2003 U.S. Dist. LEXIS 27237, at *49-50 (that the
headquarters are in New Jersey and several individuals involved in the decision have offices in
New Jersey was insufficient to overcome the contacts with Pennsylvania and warrant application
of the NJLAD to the plaintiff's employment claims); Brunner v. AlliedSignal, Inc., 198 F.R.D.
612, 614 (D.N.J. 2001) (dismissing the plaintiff's NJLAD claim where the defendant maintained
corporate headquarters in New Jersey, but the plaintiff, a New Jersey-resident, worked exclusively
in Pennsylvania).

Likewise, Plaintiff's belief that her computer equipment shipped from New Jersey is not
only speculative, but, more importantly, is wholly irrelevant.  Plaintiff's opposition cites to Trevejo
v. Legal Cost Control, Inc., 2018 N.J. Super. Unpub. LEXIS 727 (App. Div. 2018), which fails to

offer any support for her position.[5]  In <u>Trevejo</u>, the plaintiff alleged she not only received her work equipment from New Jersey, but also utilized the company's network based in New Jersey and maintained "day to day" contact with the New Jersey office in connection with her employment. <u>Id.</u> at *6-7 (finding that, based on the facts alleged, further discovery was needed to determine whether the NJLAD applied to the plaintiff's claims).  Here, Plaintiff does not include <u>any</u> factual allegations to suggest she maintained regular contact, much less "day to day" contact, with the New Jersey office or anyone in New Jersey.[6]  In fact, based on the allegations in the Amended Complaint, the opposite is true.  Plaintiff alleges she consulted with other anatomic pathologists throughout the country but does not contend any were based in New Jersey (because none were). Plaintiff does not even allege Defendants maintained a laboratory in New Jersey (because they do not).  Thus, even if true, the shipment of a computer from New Jersey does not establish that New Jersey law is applicable to Plaintiff's claims.

Moreover, Plaintiff's allegation that compensation decisions may have been made in New Jersey is insufficient to save her claims from dismissal for two reasons.  First, in her Amended Complaint, Plaintiff only alleges "on information and belief" that compensation decisions were made "centrally" in New Jersey, but does not set forth any factual allegations to support her

---

[5] While Plaintiff also places great emphasis on the <u>Calabotta</u> Court's comments about the difficulty on pinpointing work location in a remote work environment, these musings are mere dicta and played no role in the court's decision. <u>Calabotta</u>, 460 N.J. Super. at 74 (offering an "observation" that remote work can make it difficult to determine the location of an "office," but noting that the court did not "presume in this opinion to begin to resolve those innumerable hypothetical scenarios").

[6] A similar result was reached by the court in <u>Walters</u>, 2019 U.S. Dist. LEXIS 52355, at *10, where the plaintiff likewise argued that <u>Trevejo</u> "supports the proposition that out-of-state employees can bring a cause of action under NJLAD."  The court rejected the plaintiff's argument and noted that, unlike <u>Trevejo</u>, the plaintiff in <u>Walters</u>, who worked as a store manager in Connecticut, did not allege he had any work responsibilities in New Jersey. <u>Id.</u>  The court emphasized that <u>Trevejo</u> did not find the plaintiff could maintain an NJLAD claim. <u>Id.</u>  Rather, <u>Trevejo</u> merely found that further discovery was necessary to determine whether the NJLAD applied to her claims. <u>Id.</u> Here, similar to <u>Walters</u>, the court should reject Plaintiff's attempt to assert NJLAD claims as she does not allege in the Complaint that she had any work responsibilities in New Jersey.

conclusion.  With a motion to dismiss, this Court is not required to accept Plaintiff's speculative assertions as true. See, e.g., Jubelt v. United Mortg. Bankers, Ltd., 2015 U.S. Dist. LEXIS 84595 (D.N.J. 2015) (holding that a plaintiff "cannot survive a motion to dismiss by offering only conclusory, unsupported allegations made upon information and belief.  Such allegations, without more, fail to demonstrate [the p]laintiff's plausible entitlement to relief.") (citations omitted); Piscopo v. Public Serv. Elec. & Gas Co., 2015 U.S. Dist. LEXIS 82982, at *20 (D.N.J. 2015) (finding that plaintiff's unsubstantiated allegation in the complaint regarding his beliefs was equivalent to the "upon information and belief" allegation that courts routinely reject); Advanced Oral Techs., L.L.C v. Nutrex Research, Inc., 2011 U.S. Dist. LEXIS 28625, at *11-12 (D.N.J. 2011) ("[M]any of [the p]laintiff's new paragraphs contain unsubstantiated charges made upon 'information and belief.'  Allegations made upon information and belief—which are little more than conjecture and wishful thinking—have little hope of salvaging an otherwise defective complaint."); Keita v. Delta Cmty. Supports, Inc., 2020 U.S. Dist. LEXIS 110550 (E.D. Pa. 2020) (dismissing plaintiff's discrimination claims when the plaintiff failed to plead any factual allegations beyond "her pleading upon information and belief" that would raise her claims "beyond the level of possible to plausible.").

Further, even if true, this factor is not determinative in the choice of law analysis and certainly does not outweigh Plaintiff's place of employment.  Recently, in Walters, 2019 U.S. Dist. LEXIS 52355, at *10, this Court found that the plaintiff was not entitled to the protections of the NJLAD even though the plaintiff alleged he objected to discriminatory conduct in New Jersey and worked in New Jersey for over a decade.  The Court expressly *rejected* the plaintiff's argument that "clear legal precedent recognizing that the broad protections provided under the LAD apply to persons who live outside New Jersey who are impacted by discrimination that took place in New Jersey," and held no such "clear legal precedent exists."  Id. at 5-6.  In concluding that

11

Plaintiff's home state of Connecticut had the most significant relationship to the plaintiff's claims, the Court noted:

> Ultimately, Plaintiff's []LAD claims fail because he was employed outside the state of New Jersey. ***Even if Plaintiff had plausibly alleged that he was the victim of discriminatory <u>decision-making</u> that occurred within New Jersey, which he does not, that would still probably be<u> insufficient to survive a motion to dismiss</u>***. 'Whether Plaintiff worked for a New Jersey entity or not, and whether the alleged discriminatory conduct emanated from New Jersey or not, it is clear that Plaintiff performed her duties ... elsewhere, but at no time did he work in New Jersey. In these circumstances, the Plaintiff's connection to New Jersey is insufficient to assert an []LAD cause of action."

Id. (emphasis added) (quoting Albert v. DRS Techs., Inc., 2011 U.S. Dist. LEXIS 55320, at *2 (D.N.J. 2011) (dismissing the plaintiff's NJLAD claims where she worked for New Jersey corporation and alleged that the discriminatory decision to terminate her was made in New Jersey, but she worked in Florida)).

Here, there is ample evidence already before the Court that Plaintiff was employed in New Hampshire, not New Jersey, and New Hampshire law should apply to her claims. See Donovan v. W.R. Berkeley Corp., et al., 566 F. Supp. 3d 224 (D.N.J. 2021) (granting motion to dismiss New Jersey claims where the plaintiff's New York work location outweighed "sparse" evidence of New Jersey contacts, which included that the alleged discriminator made harassing comments in New Jersey, the plaintiff interviewed in New Jersey, and the plaintiff "semi-regularly" worked in New Jersey). As detailed in Section III.B of Defendants' moving brief, and based on the allegations in the Amended Complaint, New Hampshire bears the most significant relationship to this dispute:

- At all relevant times, Plaintiff was and remains a resident of New Hampshire, not New Jersey.

- At all relevant times, Plaintiff was employed by Zoetis Reference Labs to work from her home in New Hampshire, not New Jersey.[7]

---

[7] Plaintiff argues that her home location is merely "fortuitous" and a "pre-Internet Anachronism." (Pl's Br., at p. 22). Defendants disagree. Plaintiff lived and worked in New Hampshire, paid taxes there, and would have relied on state benefits if she had been involuntarily separated from employment. Several courts have held that payment of taxes and receipt of benefits are important factors in the choice of law analysis. See, e.g., Schneider v. Sumitomo Corp. of

- At all relevant times, Plaintiff's pay was issued to her in New Hampshire and subject to tax withholdings consistent with New Hampshire law, not New Jersey law. Plaintiff's pay did not include any New Jersey employment tax withholdings or deductions.

- Plaintiff acknowledged New Hampshire law applied to her claims when she filed a Charge of Discrimination asserting claims under New Hampshire law, with the New Hampshire Commission for Human Rights, which was cross-filed with the EEOC. Importantly, no allegations under the LAD, or any other New Jersey law, were asserted in the Charge of Discrimination.

- Plaintiff's direct supervisor at the time of hire was Dr. David Gardiner, former Director of Anatomic Pathology, Zoetis Reference Labs, who at all relevant times, worked in Salt Lake City, Utah, not New Jersey.

- Plaintiff's offer letter, which included Plaintiff's starting salary, was signed by Dr. Gardner.[8]

- On or about June 2021, Plaintiff began reporting to Mark Ackermann, Director of Anatomic Pathology, Zoetis Reference Labs, who at all relevant times, worked in Iowa, not New Jersey.

- Plaintiff raised complaints regarding her compensation to Dr. Goldstein, and Ivelisse Williams, Director, HR Business Partner, who works in Virginia, not New Jersey. Plaintiff concedes her complaints were ultimately addressed by Ms. Williams.

- The purported comparators identified in Plaintiff's Amended Complaint were employed by Zoetis Reference Labs in Colorado and California respectively, not New Jersey.

---

America, 2010 U.S. Dist. LEXIS 59101(D.N.J. 2010) (finding that the state where the plaintiff received disability benefits warranted applying that state's employment laws); Peikin v. Kimmel Silverman, P.C., 576 F. Supp. 2d 654, 658 (D.N.J. 2008) (observing that after the plaintiff "was terminated, [the p]laintiff received unemployment benefits from the Pennsylvania Department of Labor and Industry Unemployment Compensation Division, . . . [in determining that] the record indicates that Plaintiff's 'state of employment' was Pennsylvania.").

[8] Plaintiff asks this Court to ignore the Certifications of Ivelisse Williams and David Gardiner. However, each offers facts integral to Plaintiff's Amended Complaint and are only necessary because Plaintiff failed to include these relevant facts. Thus, the Court is well within its discretion to consider them. Hayden v. Hartford Life Insurance Company, 2010 U.S. Dist. LEXIS 130079, at *8 (D.N.J. 2010) ("In evaluating a motion to dismiss, a court may consider . . . undisputedly authentic documents if the claims are based upon those documents."); see also Bethea v. Merchants Commercial Bank, 2011 U.S. Dist. LEXIS 118570, at *5 n. 2 (D.V.I. Oct. 13, 2011) (because the offer letter was referenced in the complaint and forms a basis for the plaintiff's breach of contract claims, it can be considered with the defendant's motion to dismiss); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("Plaintiffs cannot prevent a court from looking at the texts of the document on which its claim is based by failing to attach or explicitly cite them.").

- Plaintiff's injury occurred in the place where she "felt" it – New Hampshire, not New Jersey.[9]

- Plaintiff's work was assigned and distributed from outside of New Jersey. Plaintiff was generally required to return her work to Zoetis Reference Labs' laboratory in Louisville, Kentucky or other locations, not New Jersey.

- Plaintiff's employment with Zoetis Reference Labs ended pursuant to her voluntary resignation in New Hampshire, not New Jersey.

These facts taken from or integral to the Amended Complaint, which Plaintiff conveniently omits from her opposition papers, clearly establish that New Hampshire law, not New Jersey law, applies. As Plaintiff has not met her burden of establishing that New Jersey has the "most significant relationship to her claims," Counts III and IV of Plaintiff's Amended Complaint – N.J. EPA and violation of the gender discrimination provisions of the LAD – must be dismissed with prejudice.

## POINT III

### FURTHER DISCOVERY IS NOT WARRANTED WHERE, AS HERE, NEW JERSEY LAW CLEARLY DOES NOT APPLY TO PLAINTIFF'S CLAIMS.

Further discovery is not required as the allegations in the Amended Complaint clearly establish that New Hampshire law applies to Plaintiff's claims stemming from her employment in New Hampshire. Despite efforts to obfuscate the issue, Plaintiff's Amended Complaint, of which she is the master, only sets forth three distinct allegations with a connection to New Jersey: (1) Defendants' headquarters are in New Jersey (Amended Complaint ("Am. Compl.") ¶¶ 22-23, Docket Entry No. 52), (2) Plaintiff believes her equipment shipped from New Jersey (Am. Compl. ¶ 40), and (3) Plaintiff believes pay decisions were made in New Jersey (Am. Compl. ¶ 41). As set forth in Point II, supra, these allegations, even if true, are insufficient, under relevant precedent,

---

[9] See Calabotta, 460 N.J. Super. at 71 (recognizing that the "injury" is "felt" in the place where plaintiff resides).

14

to warrant application of New Jersey law.  Thus, Defendants assert that further discovery is unnecessary, and Plaintiff's claims under New Jersey law should be dismissed with prejudice.

Plaintiff's opposition downplays or omits key admissions within the Amended Complaint that show the locale of her employment was New Hampshire.  That is: (1) Plaintiff lived and worked in New Hampshire and does not allege any employment, day-to-day, or even sporadic contact with New Jersey; (2) Plaintiff's work was assigned, distributed from and returned to a central laboratory and principal place of business in Kentucky, not New Jersey; and (3) Plaintiff filed a Charge of Discrimination with the New Hampshire Commission for Human Rights, which asserted claims under New Hampshire law. Further, while Plaintiff repeatedly states in her opposition that she and her colleagues "worked under" Dr. Goldstein in New Jersey, Dr. Goldstein was admittedly two to three levels senior to Plaintiff.  Yet, Plaintiff fails to acknowledge that the Amended Complaint identifies Dr. Gardiner, who worked in Utah, and Mr. Ackermann, who worked in Iowa, as her direct supervisors during her employment. (Am. Compl. ¶¶ 44, 51).

Further, it is well settled that "[d]iscovery . . . cannot serve as a fishing expedition through which plaintiff searches for evidence to support facts he has not yet pleaded." Giovanelli v. D. Simmons Gen. Contracting, No. 09-1082, 2010 U.S. Dist. LEXIS 23685, at *17 (D.N.J. Mar. 15, 2010).  "Similarly, discovery is not meant to serve as a basis for plaintiffs to develop a legal theory on which they can prevail." Dymnioski v. Crown Equip Corp., No. 11-3696, 2012 U.S. Dist. LEXIS 76955, at *17-18 (D.N.J. Jun. 1, 2012) (citing Plastipak Packaging, Inc. v. DePasquale, 363 F. App'x 188, 192 (3d Cir. 2010); Burns v. Lavender Hill Herb Farm, Inc., 167 F. App'x 891, 894 (3d Cir. 2006)).

Thus, based on the allegations in the Amended Complaint, it is clear Plaintiff's employment was not based in New Jersey and any ties to New Jersey are remote at best.  Based

on the robust record already before this Court, Defendants assert that further discovery is unnecessary.[10]

## **CONCLUSION**

Defendants respectfully request that the Court dismiss, with prejudice, Counts III and IV of Plaintiff's Amended Complaint.

Respectfully Submitted,

JACKSON LEWIS P.C.

200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200

By:     s/ Robert J. Cino
        Richard J. Cino
        Robert J. Cino
        Linda J. Posluszny

Attorneys for Defendants

DATED: May 30, 2023
4859-5975-6391, v. 1

---

[10] Additionally, Plaintiff's argument that Defendants citation to Plaintiff's deposition testimony is improper is incorrect. See South Jersey Gas Co. v. Mueller Co., No. 09-4194, 2012 U.S. Dist. LEXIS 200577, at *7 (D.N.J. Jan. 30, 2012) (citing Smith v. Lindemann, C.A. No. 10-3319 (FSH), 2011 U.S. Dist. LEXIS 82680, 2011 U.S. Dist. LEXIS 82680, at *7 n.3 (D.N.J. July 28, 2011); Clorox Co. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (3d Cir. 2000); Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 454 (7th Cir. 1988) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.")).

16