UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FRANCES YVONNE SCHULMAN,<br><br>*Plaintiff,*<br><br>v.<br><br>ZOETIS, INC. and<br>ZOETIS REFERENCE LABS, LLC,<br><br>*Defendants.* | Civil Action No. 22-1351(MEF)(LDW)<br><br>**OPINION and ORDER** |

The Plaintiff sued the Defendants under federal law and New Jersey law, alleging she received less pay than certain male co-workers.

The Defendants now move to dismiss the New Jersey law claims, principally because the Plaintiff, a remote worker, did not live or work in New Jersey. The motion is denied.

### I. Procedural History

This case was initiated during March of 2022, and a motion to dismiss was filed a few months later. Before the motion was decided, the Plaintiff filed an amended complaint, during March of 2023. This made the original motion to dismiss moot.

During April 2023, the Defendants filed a renewed motion to dismiss, directed at the amended complaint. Opposition and then reply papers were filed during late May, and on June 13 the case was re-assigned to the undersigned.

As noted, the current motion to dismiss concerns only the Plaintiff's state law claims. These arise under various provisions of New Jersey's Law Against Discrimination, N.J.

1

Stat. Ann. § 10:5-1 et seq. (West) ("New Jersey LAD"). In support of their motion to dismiss, the Defendants assert that the Plaintiff is a New Hampshire resident; that she worked during the relevant period only in New Hampshire; and that her only meaningful allegation related to New Jersey is that the Defendants' headquarters are there. Memorandum of Law in Support of Defendants' Partial Motion to Dismiss ("Defendants' Memo") at 1.[1]

In these circumstances, the Defendants argue, the New Jersey LAD does not apply (Defendants' Memo at 9-16) and New Hampshire law does (Defendants' Memo at 16-29).

These arguments are taken up below, each in turn.

## II.  The New Jersey Law Against Discrimination

As noted, the Defendants first argue that the New Jersey LAD "does not extend to employment outside of New Jersey," Defendants' Memo at 10, and that the Plaintiff worked outside of the state at all relevant times. See id. at 12. Accordingly, the Defendants argue, the New Jersey LAD does not apply in this case and the motion to dismiss should be granted. See id. at 9-16.

To evaluate this argument, the Court considers New Jersey law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). When doing so in this context, "the decisions of the [New Jersey] Supreme Court are the authoritative source." Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010).

But as to the issue here --- does the New Jersey LAD reach a remote worker who worked for a New Jersey company, but outside of New Jersey? --- the New Jersey Supreme Court has not issued a "controlling decision." Popa v. Harriet Carter Gifts, Inc., 52 F.4th 121, 125 (3d Cir. 2022); see also Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000).

Accordingly, this Court must "predict" how the Supreme Court of New Jersey will eventually resolve this issue. See Spence, 623 F.3d at 216. To make this prediction, a range of sources may be

---

[1] For her part, the Plaintiff emphasizes that she was a remote worker during the relevant period, employed by a New Jersey company; that her supervisor was based in New Jersey; and that the relevant decisions about her and others' pay were made in New Jersey. See Amended Complaint ¶¶ 22-23, 41, 42, 51, 83.

2

consulted. See, e.g., Buffetta, 230 F.3d at 637 (listing sources); McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 662-663 (3d Cir. 1980) (listing more sources); see generally Popa, 52 F.4th at 125.

These include relevant "opinions of intermediate appellate state courts." Buffetta, 230 F.3d at 637. Here, there is one such opinion: Calabotta v. Phibro Animal Health Corp., 460 N.J. Super. 38 (2019).

In Calabotta, a non-New Jersey resident sued his "New Jersey-based former employer." Id. at 44. The former employee alleged that he was denied a "promotion to a position in New Jersey"; that he was then fired from his job at the New Jersey employer's non-New Jersey-based subsidiary; and that all this violated New Jersey's LAD. Id. In this circumstance, Calabotta asked, "can the [New Jersey LAD] protect nonresident workers and job applicants[?]" Id. at 45.

The Calabotta Court answered: yes and yes. See id. at 45-46. First, the New Jersey LAD can "extend" to the non-promotion of a non-New Jersey resident into a New Jersey job. Id. at 45. And second, the New Jersey LAD can "extend," id. at 45, to wrongfully discharging a non-New Jersey resident from a non-New Jersey-based job with a New Jersey entity's subsidiary. See id. at 45-46.

The Calabotta Court's core reasoning: the New Jersey LAD protects "all persons" --- and "[t]he statute's plain language . . . does not limit the definition of 'person' to New Jersey residents or employees." Id. at 61. (The Court noted that other relevant statutory terms, "employer" and "any individual," also do not purport to limit the statute's coverage to those who work or live in New Jersey. See id. at 61-62.)

Will the New Jersey Supreme Court take Calabotta's approach?

If yes, the New Jersey LAD can reach the Plaintiff's allegations in this case. The Plaintiff here is like the plaintiff in Calabotta: a non-New Jersey resident working outside of New Jersey for a New Jersey-connected employer. And the statutory provisions of the New Jersey LAD at play in this case are the same ones construed in Calabotta --- "person," "employer" and "individual."

* * *

3

Case 2:22-cv-01351-MEF-LDW   Document 76   Filed 07/14/23   Page 4 of 17 PageID: 515

The Court predicts that the New Jersey Supreme Court, when confronted with the question, will hold that the New Jersey LAD can reach a remote worker who worked for a New Jersey-based company, but physically outside of New Jersey.

This prediction is based on five considerations.

### [1] Calabotta

First, the Calabotta decision is, itself, a firm data point from which to predict what the New Jersey Supreme Court will decide. See, e.g., Rivard v. Trip Mate, Inc., 2023 WL 2624721, at *2 n.3 (3d Cir. Mar. 24, 2023); see generally U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 93 (3d Cir. 1996) ("due deference to the decisions of lower [state] courts" in prediction analysis); Robinson v. Jiffy Exec. Limousine Co., 4 F.3d 237, 242 (3d Cir. 1993) ("we must give serious consideration to the decisions of the intermediate appellate courts in ascertaining and applying state law"); City of Philadelphia v. Lead Indus. Ass'n, Inc., 994 F.2d 112, 123 (3d Cir. 1993) ("decisions of state intermediate appellate courts should be accorded significant weight" in prediction analysis).

### [2] Interpretive Principles

Second, Calabotta's analysis was based on the statutory interpretation principles the New Jersey Supreme Court applies in this area. This increases the likelihood that the New Jersey Supreme Court, when it gets its chance, will see things the way Calabotta did.

The first of the statutory interpretation principles is general. It applies across the board. The New Jersey Supreme Court has said:

> In determining the meaning of a statute, we consider first the plain language of the statute. If the language is clear, we interpret the statute consistent with its plain meaning.

Oberhand v. Dir., Div. of Tax'n, 193 N.J. 558, 568 (2008); see also, e.g., Richardson v. Bd. of Trs. Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007) ("If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over."); cf. Instructional Sys., Inc. v. Comput. Curriculum Corp., 130 N.J. 324, 367 (1992) (assessing extraterritorial reach of New Jersey statute in light of "the question of whether

4

the New Jersey Legislature intended the Act to apply to . . . activities outside of the state").

This "plain language" approach is a big part of how the Calabotta Court did its work. Calabotta zeroed-in on key statutory terms --- employer, person, and individual. See Calabotta, 460 N.J. Super. at 61-62. And Calabotta declined to read into these terms any concepts that are not plainly there in the words. See id. "Person," for example, was not read as "person in New Jersey."[2]

The second relevant statutory interpretation principle: the New Jersey Supreme Court has held that "special rules of interpretation," Nini v. Mercer Cnty. Cmty. Coll., 202 N.J. 98, 108 (2010), should be applied to the New Jersey LAD. As the Supreme Court has put it:

> The [New Jersey LAD] is remedial social legislation whose overarching goal is to eradicate the cancer of discrimination. As such, it should be liberally construed. Indeed, this Court has been scrupulous in its insistence that the Law Against Discrimination be applied to the full extent of its facial coverage.

Id. at 108-09 (cleaned up); see also, e.g., N.J. Stat. Ann. § 10:5-3 (West) ("[t]he Legislature intends that ... [the New Jersey LAD] shall be liberally construed").

Applying these "special rules[,]" the New Jersey Supreme Court has held that the New Jersey LAD's coverage extends to the full breadth of the statute's (broad) language. See, e.g., Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 495 (1982) (declining to read into the New Jersey LAD's prohibition on discrimination based on "physical disability" a "so-called severe disabilities" requirement); Bergen Com. Bank v. Sisler, 157 N.J. 188, 215 (1999) (declining to read into the New Jersey LAD's prohibition on age discrimination a requirement that it be based on older age, as opposed to younger age); cf. Zahorian v. Russell Fitt Real Est. Agency, 62 N.J. 399, 405 (1973) (similar).

---

[2] Cf. In re Makowka, 754 F.3d 143, 150 (3d Cir. 2014) (predicting development of state law in light of a particular intermediate appellate opinion, in part because that opinion "comports with the text . . . of the statute" it was interpreting).

5

The Calabotta Court followed this approach. It applied the "special rules of interpretation" that govern the New Jersey LAD. See Calabotta, 460 N.J. Super. at 60. And it did so in a way that is consistent with those rules. On its "fac[e]," Nini, 202 N.J. at 108-09, the text of the New Jersey LAD is not limited to in-state plaintiffs. That is the "full extent" of the statute, id., and that is the reach Calabotta gave it.

To be sure, the New Jersey Supreme Court has sometimes suggested that "liberal construction" is not just a matter of reading the New Jersey LAD to "the full extent of its facial coverage," Nini, 202 N.J. at 108-09, but is also a matter of interpreting the statute with an eye to advancing its overall goals. For example:

> When confronted with any interpretive question, we must recognize that the [New Jersey LAD] is remedial legislation . . . , and should therefore be liberally construed in order to advance its beneficial purposes.

Smith v. Millville Rescue Squad, 225 N.J. 373, 390 (2016) (cleaned up). The statute's purpose, per the Supreme Court, "is to abolish discrimination in the work place." Raspa v. Off. Of Sheriff of Cnty. Of Gloucester, 191 N.J. 323, 335 (2007) (cleaned up).

The Calabotta Court also followed this approach. It interpreted the New Jersey LAD in light of the "purpose[]" of the statute. See Calabotta, 460 N.J. Super. at 61. And it reached an outcome that apparently seeks to advance that purpose: if a New Jersey-based company and its New Jersey-based officials are making decisions on a discriminatory basis, there is "discrimination in the work place" in New Jersey --- and that is so regardless of where a particular employee reports to work.[3]

---

[3] Cf. generally Jaworowski v. Ciasulli, 490 F.3d 331, 335 (3d Cir. 2007) (predicting state law in light of intermediate appellate opinion whose reasoning is consistent with state law's overall "goals" in the relevant area); Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A., 879 F.3d 79, 86 (3d Cir. 2018) (predicting state law in light of intermediate appellate opinion whose reasoning is consistent with state public policy); cf. also Wolfe v. Allstate Prop. & Cas. Ins. Co., 790 F.3d 487, 492-93 (3d Cir. 2015) (predicting state law in light of state's declared public policy).

6

The third relevant statutory interpretation principle is one that was notable for not being there. Namely, Calabotta did not invoke any presumption against extraterritoriality. This, too, is consistent with the New Jersey Supreme Court's general approach. See, e.g., Real v. Radir Wheels, Inc., 198 N.J. 511 (2009); see generally William S. Dodge, Presumptions Against Extraterritoriality in State Law, 53 U.C. Davis L. Rev. 1389, 1413 (2020) ("Seventeen states have rejected a presumption against extraterritoriality – . . . [including] New Jersey[.]").[4]

Fourth and finally, Calabotta discounted the weight of the New Jersey LAD's preamble, as at odds with the relevant "operative" language of the statute, like "employer." See Calabotta, 460 N.J. Super. at 62-64. This, too, was in keeping with core principles of statutory interpretation under New Jersey law. See id. (analyzing DiProspero v. Penn, 183 N.J. 477 (2005)).

In short: Calabotta hewed to the New Jersey Supreme Court's "fundamental precept[s]" as to statutory interpretation. In re Makowka, 754 F.3d at 148. Calabotta analyzed the New Jersey LAD using the approach the New Jersey Supreme Court would itself take to interpreting the statute. This means there is a better chance that, in the end, the New Jersey Supreme Court will land on the same bottom-line conclusion as Calabotta: that the New Jersey LAD can apply to out-of-New Jersey workers employed by New Jersey-based companies.[5]

---

[4] The federal presumption against extraterritoriality, see, e.g., Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247, 255 (2010), has no place here, because in the Erie-prediction context federal courts must generally interpret state law using the interpretive methods used by the courts of the relevant state itself. See In re Trs. of Conneaut Lake Park, Inc., 855 F.3d 519, 523 (3d Cir. 2017); Klein v. Weidner, 729 F.3d 280, 286 (3d Cir. 2013); cf., e.g., Popa, 52 F.4th at 129; but cf. Abbe R. Gluck, Intersystemic Statutory Interpretation: Methodology As "Law" and the Erie Doctrine, 120 Yale L.J. 1898, 1927-29 (2011) (noting that the law in this area may not be uniform or fully developed).

[5] Cf. Popa, 52 F.4th at 129 (discounting predictive weight of intermediate appellate opinion interpreting state statute because opinion is at odds with state law interpretative principle that the statute in question be strictly construed); In re Makowka, 754 F.3d at 148 (discounting predictive weight of intermediate appellate opinion because it is at odds with a "fundamental precept[]" of state law); cf. also Colliers Lanard

### [3] Analogous Decisions

Third, "[i]n carrying out th[e] task [of predicting how the New Jersey Supreme Court will rule], [federal courts] must consider . . . analogous decisions." Packard v. Provident Nat. Bank, 994 F.2d 1039, 1046 (3d Cir. 1993) (cleaned up).

Here, the most "analogous decision[]" is Halliday v. Bioreference Lab'ys, Inc., 2022 WL 3051348 (N.J. Super. Ct. App. Div. Aug. 3, 2022). Halliday, like Calabotta, considered whether a New Jersey workplace-protection statute can be invoked by a non-New Jersey plaintiff who worked outside of New Jersey, but for a New Jersey company. See id. at *2, *12-13. Calabotta assessed the New Jersey LAD, and Halliday considered the New Jersey Conscientious Employee Protection Act. See id.; Calabotta, 460 N.J. Super. at 44. Those statutes are deeply similar. See Gares v. Willingboro Twp., 90 F.3d 720, 730 (3d Cir. 1996) (analogizing from the New Jersey Conscientious Employee Protection Act to the New Jersey LAD because the two "are quite similar in their broad language, remedial purpose, and legislative history" and "[t]he New Jersey Supreme Court [has] treated them as matching pairs").

Halliday and Calabotta are, in short, "analogous decisions," Packard, 994 F.2d at 1046, --- and the opinions are consistent with one another in terms of both holding and reasoning. Halliday:

> [W]e are persuaded CEPA [the New Jersey Conscientious Employee Protection Act] is sufficiently broad to extend to plaintiff [who lived and worked in Texas] as an employee of a New Jersey corporation that is also headquartered in this State . . . . Our Supreme Court has explained CEPA is remedial legislation[ ] [that] should be construed

---

& Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006) (invoking in Erie-prediction context state law principle of interpretation as to narrow construal of insurance contract provision); see generally Gluck, Intersystemic Statutory Interpretation, 120 Yale L.J. at 1929-30 ("If the state court . . . has set out its decisionmaking process [as to] . . . [a] statutory interpretation methodology, then state law provides a path to approximating how the state's highest court would resolve the case. . . . [A] different . . . approach . . . is less likely to produce the same result.")

8

> liberally to effectuate its important social goal — to encourage, not thwart, legitimate employee complaints.
>
> CEPA broadly defines an "employer" as "any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." N.J.S.A. 34:19-2 (emphasis added). CEPA also expansively defines an "employee" as "any individual who performs services for and under the control and direction of an employer for wages or other remuneration." . . . The statute does not limit the definition of employer to persons or entities located in New Jersey, and the definition of employee is not restricted to individuals performing services in New Jersey . . . .
>
> Based on CEPA's broad remedial purposes and inclusive text, and our obligation to construe the statute "liberally to effectuate its important social goal" of "protect[ing] and encourag[ing] employees to report illegal or unethical workplace activities and to discourage . . . employers from engaging in such conduct," we are convinced the Legislature did not intend to limit the statute's protections to only employees who live and work in New Jersey. Thus, . . . plaintiff may assert a CEPA claim even though she lived and worked for defendant in Texas. . . .

Halliday, 2022 WL 3051348, at *12 (cleaned up).

As the above makes clear, Calabotta and Halliday are closely consistent. Both cases held that a New Jersey workplace-protection statute could be invoked by a non-New Jersey plaintiff who worked outside of New Jersey, but for a New Jersey company. Compare Halliday, 2022 WL 3051348, at *12-13 with Calabotta, 460 N.J. Super. at 60-65. And the cases got there in similar ways. By focusing on the plain meaning of the statute at hand, including on the lack of limiting language in the definition of "employer."[6] And by focusing on the broad remedial purposes of the statute in play.[7]

---

[6] Compare Halliday, 2022 WL 3051348, at *12 with Calabotta, 460 N.J. Super. at 61-62.

[7] Compare Halliday, 2022 WL 3051348, at *12 with Calabotta, 460 N.J. Super. at 61.

In sum: Calabotta and Halliday are "analogous decisions," Packard, 994 F.2d at 1046, that came to similar conclusions for similar reasons on similar issues. This strengthens the prediction that the New Jersey Supreme Court, when it gets the chance, will come to essentially the same conclusion as Calabotta as to the reach of the New Jersey LAD. See Crystallex Int'l Corp.,879 F.3d at 85-86 (predictive power of intermediate appellate court interpretation of statute is stronger given another intermediate appellate court interpretation of a closely similar statute).[8]

**[4]   Federal Courts**

"In predicting how a matter would be decided under state law we examine . . . federal . . . district court cases interpreting the state law." Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 406 (3d Cir. 2000). And a number of federal courts (though not all) have suggested that the New Jersey LAD can reach the case of a worker based outside of New Jersey who worked for a New Jersey company. See Rampersad v. Dow Jones & Co., Inc., 2020 WL 529212, at *3 (D.N.J. Jan. 31, 2020) ("Although the New Jersey Supreme Court has not decided the circumstances under which an out-of-state plaintiff may bring a [New Jersey LAD] claim, this Court is persuaded that it would adopt Calabotta's reasoning."); see also Walters v. Safelite Fulfillment, Inc., 2019 WL 7343481, at *5 (D.N.J. Dec. 31, 2019) (citing Calabotta); Donovan v. W. R. Berkley Corp., 566 F. Supp. 3d 224 (D.N.J. 2021) (same); but see Kunkle v. Republic Bank, 2023 WL 4348688, at *6-7 (D.N.J. July 5, 2023).

**[5]   Basis to "Disregard"**

A fifth and final reason to predict the New Jersey Supreme Court will take the same line as Calabotta starts from the principle that "opinions of intermediate appellate state courts," such as

---

[8] Calabotta's reasoning is also broadly consistent with the reasoning of another New Jersey intermediate appellate court opinion. That opinion, Scheeler v. Atl. Cnty. Mun. Joint Ins. Fund, 454 N.J. Super. 621 (App. Div. 2018), construed the state's Open Public Records Act and considered whether non-resident plaintiffs can sue under it. This is an additional way in which Calabotta is not "anomalous." Lupu v. Loan City, LLC, 903 F.3d 382, 391 (3d Cir. 2018) (discounting predictive power of intermediate appellate court opinion because it is an "anomalous case" that stands "practically alone").

Calabotta, "are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" Buffetta, 230 F.3d at 637 (quoting West v. AT & T Co., 311 U.S. 223, 237 (1940)).

Here, the Defendant offers two pieces of "data." Neither is persuasive.

The first: the New Jersey Division of Civil Rights website displays a question and answer section, posted in March 2020, at the onset of the Covid pandemic, and focused (apparently) on then-emerging remote work issues. One listed answer in the Q-and-A, the Defendant asserts, speaks about the reach of the New Jersey LAD in a way that is at odds with Calabotta. This matters, the Defendants argue, because under New Jersey law an agency legal interpretation of a statute is entitled to some deference. See Defendants' Memorandum at 15-16 (citing In re Pub. Serv., 167 N.J. 377, 383-84 (2001)).

But it is far from obvious that the quick-and-colloquial website Q-and-A counts as an agency legal interpretation. And even if it does, deference is given under New Jersey law only when the statute being interpreted is ambiguous. See, e.g., Oberhand, 193 N.J. at 568. But that is not the case here. And in any event, if the Defendants mean to suggest the 2020 Q-and-A shows that the Division of Civil Rights disagrees with the 2019 Calabotta decision --- then note that under New Jersey law agencies are not entitled to deference on their interpretation of judicial precedents. See, e.g., Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 171 (App. Div. 2018).

As a second basis for "disregard[ing]," Buffetta, 230 F.3d at 637 (quoting West, 311 U.S. at 237)), the Calabotta decision, the Defendants cite numerous cases in which New Jersey courts hold that the New Jersey LAD does not apply in cases like this one, but that another state's law does. See Defendants' Memo at 9-12 (citing various cases). But this, too, is not persuasive.

To see why, take a step back. When, as here, a plaintiff sues under a state statute, courts routinely analyze the issues using a two-step structure. In the first step, the court asks --- does the statute the plaintiff invokes reach the conduct she alleges? If "yes," courts must sometimes take a second step and

11

ask another question: should the statute nonetheless give way in favor of another law?[9]

Step one and step two of the above analysis are apples and oranges. Step one is about statutory scope. And the typical methods of inquiry (as in Calabotta) are the methods of statutory interpretation --- close reading of the statutory text, for example. Step two is a question of comparative priority --- as between multiple laws that could apply, which should take precedence and be applied? The methods of this inquiry are those of choice of law. Which jurisdiction has a tighter connection to the matter, for example, in places that follow the Restatement (Second) approach to choice of law.

Come back, now, to the case at hand. Calabotta, to the extent it has been discussed to this point, is a statutory interpretation case, about the scope of the New Jersey LAD. Can the New Jersey LAD reach out of state? This is a step one inquiry, focused on the meaning of statutory terms like "employer" and "person."

But the cases cited by the Defendants are different. They are generally focused on the necessarily comparative question of choice of law, on whether the New Jersey LAD should be applied

---

[9] For examples of judicial opinions that proceed this way in an "extraterritorial" context, see Restatement (Third) of Conflict of Laws, § 5.01, Reporter's Notes, Comment b (Am. L. Inst., Tentative Draft No. 3, 2022) (available as of July 14, 2023 at https://plus.lexis.com/document?crid=f0c742a5-b68a-4e10-a5e4-a834bdb7a6f2&pddocfullpath=%2Fshared%2Fdocument%2Fanalytical-materials%2Furn%3AcontentItem%3A60WT-GDP1-FJTD-G3K9-00000-00&pdsourcegroupingtype=&pdcontentcomponentid=473358&pdmfid=1530671&pdisurlapi=true) (collecting cases, at the paragraph that starts "[t]he model is presented clearly in cases involving statutes"). For an additional example, see Bostain v. Food Exp., Inc., 159 Wash. 2d 700, 712 (2007). For closer-to-home examples, see Calabotta and Halliday, and also Pac. Emps. Ins. Co. v. Glob. Reinsurance Corp. of Am., 693 F.3d 417, 436 (3d Cir. 2012). See also, for example, the Supreme Court of New Jersey's decision in Instructional Sys., Inc. v. Comput. Curriculum Corp., 130 N.J. 324 (N.J. 1992), which proceeds in the same two steps as set out in the text, but in a different order.

given the other law that is vying to govern the case.[10]  This is a step two inquiry.

The type of question asked in Calabotta is different than the type of question asked in the cases cited by the Defendants. And the questions are not only different, they are answered using different methods.  It is no criticism of a statutory interpretation opinion that holds that a statute can apply to certain conduct (like Calabotta) to note that choice of law opinions (like those cited by the Defendants, see footnote 10) hold that on particular facts the statute should not be applied, because another law is more appropriate.

To see the point, take a step back once more, and consider a hypothetical accident that takes place in Connecticut, involving a New Jersey resident driving himself in a car, a New York resident driving herself in a car, and an Illinois resident driving a bus carrying 40 New Jersey residents.  A lawsuit follows.  The New Jersey driver says New Jersey law applies, the

---

[10] The Defendants' main case is Buccilli v. Timby, Brown & Timby, 283 N.J. Super. 6 (App. Div. 1995).  But Buccilli does not engage in any statutory interpretation of the New Jersey LAD. It is, rather, based on three prominent choice of law cases: D'Agostino v. Johnson & Johnson, Inc., 133 N.J. 516 (1993) (discussing Restatement (Second) of Conflicts of Law), Eger v. E.I. Du Pont DeNemours Co., 110 N.J. 133 (1988) (same), and Shamley v. ITT Corp., 869 F.2d 167 (2d Cir. 1989) (analyzing "choice of law").  See also, e.g., Giovanetti v. ICI Americas, Inc., 2006 WL 1520756 (N.J. Super. Ct. App. Div. June 5, 2006) (cited in Defendants' Memo at 10, comparing "significan[ce]" of Delaware and New Jersey contacts and applying Delaware law, without any statutory interpretation of the New Jersey LAD); Kelman v. Foot Locker, 2006 WL 3333506, at *6 (D.N.J. Nov. 16, 2006) (cited in Defendants' Memo at 10, holding that "[t]he choice of law principles dictate that, given the New York employment at issue here, New York law should be applied in this case," without any statutory interpretation of the New Jersey LAD); Wagner v. Catalent Pharm. Sols., LLC, 2019 WL 1746308, at *4 (D.N.J. Apr. 18, 2019) (cited in Defendants' Memo at 11, holding that "choice-of-law rules weigh against applying New Jersey's law to the dispute at issue here," applying Kentucky law, and doing so without any statutory interpretation of the New Jersey LAD).

New York driver wants New York law, and the Illinois driver says her state's law should apply. And imagine, finally, that, by statute, each state's tort law covers "all car accidents that take place out of state, provided they take place within the tri-state area."

How does the court sort this out? In two steps.

First, the judge asks and answers statutory interpretation questions. Does the New York tort statute's invocation of "within the tri-state area" cover accidents in Connecticut? Yes. The plain meaning of "tri-state area" in New York is New York, New Jersey, and Connecticut. Does the New Jersey statute's invocation of "tri-state area" cover Connecticut accidents? Maybe, maybe not --- in some parts of New Jersey, "tri-state area" includes Connecticut and in other parts it does not. But assume that extrinsic evidence as to legislative intent resolves the ambiguity, and it becomes clear enough that the New Jersey statute's reference to "tri-state area" includes Connecticut. What about Illinois? Does the Illinois statute's reference to "tri-state area" cover accidents in Connecticut? No. "Tri-state area" in Illinois might be Illinois, Missouri, and Iowa, or it might be Illinois, Indiana, and Kentucky. (Some other permutations are possible, too.) But Connecticut is not on any list.

In short, statutory interpretation (in context, what does "within the tri-state area" mean?) leads to the conclusion that the New York tort statute and the New Jersey tort statute can reach the Connecticut accident, but the Illinois tort statute cannot.

This statutory interpretation analysis sets the stage for step two of the analysis. Namely: as between the bodies of tort law that are still standing, New Jersey and New York, which should be applied to the Connecticut accident?

This is not a matter of statutory interpretation. "What does 'tri-state area' mean?" has already been asked and answered, and it has no more help to give.

Rather, this is a matter of choice of law. Under choice of law principles, at least of the Restatement (Second) variety, no one will be surprised if the court chooses New Jersey law --- the accident involved one New Jersey driver and 40 New Jersey bus passengers, versus one New York driver.

And, most importantly: no one will say that choosing New Jersey law over New York law on the facts of the Connecticut accident case (because so many New Jersey residents were involved) somehow suggests that it had been wrong in the first place to say that New York law can reach the accident (because in New York, "within the tri-state area" includes Connecticut). The inquiries are just separate. How the second (choice of law) question is answered says nothing about the rightness or wrongness of how the first (statutory interpretation) question was answered.

This helps to underscore why the Defendants' second effort to "disregard[]," Buffetta, 230 F.3d at 637 (quoting West, 311 U.S. at 237)), the Calabotta decision is not persuasive. Calabotta holds as a matter of statutory interpretation that the New Jersey LAD can apply to certain out-of-state conduct. And that conclusion is not weakened --- indeed, it is not impacted at all --- by the bulk of the cases the Defendants cite, see footnote 10 above, which hold that on the particular facts of particular cases the New Jersey LAD should not be applied, because another law should.

* * *

In sum: the Court predicts, for the reasons set out above, that the New Jersey Supreme Court will hold that the New Jersey LAD can apply to the case of a non-New Jersey resident who works for a New Jersey-based company, but remotely outside of New Jersey.

Accordingly, the Defendants' motion to dismiss is denied to the extent it is based on the contention that the New Jersey LAD cannot reach such a case.

### III. Choice of Law

Having concluded that the New Jersey LAD can apply here, the question now is whether it should, given the Defendants' argument that another body of law (New Hampshire's) is more appropriate.

This is a choice of law question, to be resolved under the choice-of-law rules of the forum state, New Jersey. See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). Under New Jersey's choice of law rules, "[t]he first step in the analysis is to determine whether a conflict exists between the laws of the interested states." Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615, 621 (2007) (cleaned up). If there is no "conflict,"

15

the analysis ends and forum law (here, New Jersey law) is applied. See McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 584 (2017).

In this case, the Defendants seek to establish that there is a conflict by listing the on-paper differences between New Jersey and New Hampshire law. See Defendants' Memo at 17-23.

These sorts of differences-in-the-abstract matter, but not enough. More is required. "A conflict of law arises when the application of one or another state's law may alter the outcome of the case, or when the law of one interested state is offensive or repugnant to the public policy of the other." In re Accutane Litig., 235 N.J. 229, 254 (2018) (cleaned up).

It is not sufficient, for example, to show that two state laws have different limitations periods. Rather, a litigant must show why this difference matters in a practical, real-life sense on the facts of the case. Will the plaintiff's claims be time-barred if one limitations period is applied, but go forward if the other is? See generally McCarrell, 227 N.J. at 584.

Here, the Defendants do not explain how, if at all, each of the New Jersey/New Hampshire legal differences they list will make a practical difference in this case. Accordingly, they have not triggered a choice of law analysis, let alone shown that that analysis should land on New Hampshire law.[11]

Accordingly, the Defendants' motion to dismiss is denied to the extent it is based on the contention that New Hampshire law, not the New Jersey LAD, applies here.

\*   \*   \*

---

[11] In response to the Defendants' listing of New Hampshire/New Jersey legal differences, the Plaintiff conceded "for purposes of this motion," Memorandum of Law in Opposition to Defendants' Motion at 15 n.3, that there "appear[ed]" to be an actual conflict. Id. But then the Plaintiff "dispute[d]" certain aspects of Defendants' analysis[,]" id.; cited one "example" of such a dispute, id.; and argued, in any event, that the Defendants had not established that New Hampshire law should apply. See id. at 30-31. This halfway (or less) "concession" from the Plaintiff does not alter the analysis set out in the text.

The Defendants' motion to dismiss is denied.

The denial of the motion is without prejudice to the Defendants' New Jersey versus New Hampshire choice of law argument being made later, in the context of a summary judgment motion, after discovery is fully complete.

IT IS on this 14th day of July, 2023, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.