## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FRANCIS YVONNE SCHULMAN,

        *Plaintiff*,

    v.

ZOETIS, INC. and ZOETIS
REFERENCE LABS, LLC,

        *Defendants*.

No. 22-cv-01351 (MEF)(LDW)

**OPINION and ORDER**

### Table of Contents

I. **Background**
    A. **The Evidence**
    B. **The Lawsuit**
    C. **The Motions**
    D. **The Court's Approach**
II. **Substantially Equal: Already Established?**
III. **Summary Judgment**
IV. **The Plaintiff's Federal Equal Pay Act Motion**
    A. **Legal Principles**
    B. **Application**
        1. **Skill**
        2. **Effort**
        3. **Responsibility**
V. **The Defendants' Federal Equal Pay Act Motion**
VI. **Other Claims**
VII. **Conclusion**

\*  \*  \*

A medical professional came to believe she was being paid less than certain coworkers because of sex discrimination.

She sued, among others, her former employer, claiming violations of federal and state law.

The parties have moved for summary judgment.

The motions are denied.

\*    \*    \*

I.    **Background**

    A.    **The Evidence**

The evidence, as relevant for now, is set out here.

An employee ("the Employee"[1]) worked as a veterinary pathologist. See Plaintiff's Statement of Undisputed Facts (ECF 111) ¶¶ 27-28; Defendants' Response to the Plaintiff's Statement of Undisputed Facts (ECF 119-1) ("Defendants' Response") ¶¶ 27-28.

She was employed by a lab ("the Lab"[2]).  See Plaintiff's Statement of Undisputed Facts ¶¶ 27-28; Defendants' Response ¶¶ 27-28.

Other pathologists worked at the Lab; these included two men ("the Coworkers"[3]).  See Plaintiff's Statement of Undisputed Facts ¶¶ 15-17; Defendants' Response ¶¶ 15-17; see also Plaintiff's Cross-Motion for Summary Judgment, Exhibit 24.

The two Coworkers were paid more than the Employee.  Compare Plaintiff's Statement of Undisputed Facts ¶¶ 15-17, and Defendants' Response ¶¶ 15-17, with Plaintiff's Statement of Undisputed Facts ¶¶ 25-28, and Defendants' Response ¶¶ 25-28; see also Plaintiff's Statement of Undisputed Facts ¶ 74; Defendants' Response ¶ 74.

---

[1]  Francis Yvonne Schulman.

[2]  Zoetis Reference Labs, LLC.  The Lab-Defendant was formerly known as Zoetis Lab Holdings, LLC, which is what it was called when the Plaintiff was hired.  See Defendants' Statement of Undisputed Facts (ECF 106-2) ¶¶ 1, 36, 61.

[3]  Eugene Ehrhart and Samuel Jennings.

B.    **The Lawsuit**

During 2022, the Employee (from here, "the Plaintiff") sued the Lab and its parent company ("the Parent Company"[4]). Collectively, the Lab and the Parent Company are referred to from here as "the Defendants."

The core theory of the lawsuit: the Plaintiff was paid less than her Coworkers --- and this was because she is a woman, and they are men.

This, it is claimed, adds up to violations by the Defendants of two federal statutes and two state statutes.

The federal laws: the Equal Pay Act, 29 U.S.C. § 206(d) et seq. (Count I), see Amended Complaint (ECF 52) ("Complaint") ¶¶ 94–99; and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. (Count II).  See id. ¶¶ 100–05.

The state laws: the Diane B. Allen Equal Pay Act, N.J.S.A. § 10:5-12(t) (Count III), see id. ¶¶ 106–11; and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12(a) (Count IV). See id. ¶¶ 112–17.

C.    **The Motions**

Discovery is complete, and each party has moved for summary judgment.

The Defendants have moved for summary judgment as to all claims.

And the Plaintiff has moved for summary judgment as to all claims but one.  She does not seek judgment now as to her Title VII claim.

The parties' motions are before the Court.[5]

_____

[4]  Zoetis, Inc.

[5]  The Plaintiff's motion is premised on the idea that the Lab-Defendant and the Parent Company Defendant can, together, be liable, see Plaintiff's Cross-Motion for Summary Judgment (ECF 110) at 31–40, and the actions of each can be imputed to the other.  Solely for the purpose of this Opinion and Order, the Court assumes arguendo that this is the right approach.

D.    __The Court's Approach__

As noted, the Plaintiff presses a federal Equal Pay Act claim.

To prevail on that claim, the Plaintiff must establish, among other things, that certain comparators --- people who were assertedly doing "substantially equal" work --- were paid more than her because they are men.

The comparators put forward by the Plaintiff are the two Coworkers alluded to in Part I.A.

Were they doing "substantially equal" work?  The Plaintiff argues that this issue has already been resolved.  See Plaintiff's Cross-Motion for Summary Judgment (ECF 110) at 10-11; see also Plaintiff's Reply Brief (ECF 128) at 2-5.  The Court, though, disagrees.  See Part II.

Therefore, the Court must undertake its own "substantially equal" analysis.

After laying out the relevant legal principles, see Part III, the Court concludes that the Plaintiff has not established as a matter of law that the Coworkers were doing "substantially equal" work --- her summary judgment motion as to the federal Equal Pay Act claim must therefore be denied.  See Part IV.

Next, the Court turns to the Defendants' motion on the federal Equal Pay act claim.

The Court's conclusion: summary judgment cannot be granted to the Defendants either, because they have not shown they are "entitled to relief as a matter of law."  See Part V.

And all of this means that summary judgment cannot be awarded to any party here as to the remaining claims, either.

This is because the remaining claims all turn on a variant of the question that is fundamental to the federal Equal Pay Act claim --- namely, whether anyone has established as a matter of law that the Plaintiff and the Coworkers were doing "substantially equal" work.  See Part VI.

## II.   __Substantially Equal: Already Established?__

On a federal Equal Pay Act claim, it is the employee-plaintiff's burden to establish that she and her proffered comparators did "substantially equal" work.  See Summy-Long v. Pa. State Univ.,

4

715 F. App'x 179, 183 (3d Cir. 2017) (cleaned up); <u>Stanziale</u> v. <u>Jargowsky</u>, 200 F.3d 101, 107 (3d Cir. 2000); <u>accord</u>, <u>e.g.</u>, <u>Spencer</u> v. <u>Va. State Univ.</u>, 919 F.3d 199, 203 (4th Cir. 2019); <u>Terry</u> v. <u>Gary Cmty. Sch. Corp.</u>, 910 F.3d 1000, 1008 (7th Cir. 2018).

Here, the Plaintiff suggests she has already carried this burden, and that the issue is therefore no longer in play.

The Court disagrees, for the reasons set out below.

\*      \*      \*

The Plaintiff's <u>first</u> argument: the "substantially equal" issue is no longer a live one here, because an HR employee who worked for an entity related to the Parent Company, <u>see</u> Defendants' Motion for Summary Judgment, Exhibit X, at 128:8-11; Defendants' Motion for Summary Judgment, Exhibit A, at 12:9-12, testified at her deposition that the jobs of the Plaintiff and her Coworkers were "substantially equal."  <u>See</u> Plaintiff's Reply Brief at 3; <u>see</u> <u>also</u> Plaintiff's Statement of Undisputed Facts ¶¶ 30-36.

But the Plaintiff does not press any argument as to why the testimony of this HR employee, who does not seem to have been put forward as a Rule 30(b)(6) witness, binds the two Defendants.

That question is a potentially complex one.  It cannot simply be assumed that the HR employee's testimony was binding.  <u>Compare</u>, <u>e.g.</u>, <u>Hanna</u> v. <u>Giant Eagle Inc.</u>, 777 F. App'x 41, 42 (3d Cir. 2019) ("Rule 30(b)(6) testimony binds a corporation[.]"), <u>with</u>, <u>e.g.</u>, <u>Galante</u> v. <u>Fin. Indus. Regul. Auth., Inc.</u>, 2018 WL 2063748, at *9 n.12 (E.D. Pa. May 2, 2018), <u>and</u> <u>Phila. Indem. Ins. Co.</u> v. <u>Fed. Ins. Co.</u>, 215 F.R.D. 492, 494 (E.D. Pa. 2003); <u>see</u> <u>generally</u> 8A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2103 (3d ed. 2024) ("A distinction must . . . be drawn between a mere corporate employee and those who may be regarded as speaking for the corporation."); <u>cf</u>. <u>AstenJohnson, Inc.</u> v. <u>Columbia Cas. Co.</u>, 562 F.3d 213, 229 n.9 (3d Cir. 2009).

And all the more so here because, as alluded to above, the HR employee does not seem to have worked directly for either the Lab-Defendant or the Parent Company Defendant.  <u>See</u> Defendants' Motion for Summary Judgment, Exhibit X, at 128:8-11; <u>see</u> <u>also</u> Defendants' Motion for Summary Judgment, Exhibit A, at 12:9-12.

In addition, stating that certain jobs were "substantially equal" is, at bottom, an expression of a legal opinion. The federal Equal Pay Act, as noted, prohibits unequal pay for "substantially equal" work. See Shultz v. Wheaton Glass Co., 421 F.2d 259, 265 (3d Cir. 1970). That is what the HR employee testified to. See Plaintiff's Cross-Motion for Summary Judgment, Exhibit 13, 253:25 to 254:18. Indeed, under the Act, whether jobs are "substantially equal" is mainly a matter of skill, effort, and responsibility. See Stanziale, 200 F.3d at 107. That is what the HR employee ticked through at her deposition. See Plaintiff's Cross-Motion for Summary Judgment, Exhibit 13, at 257:17 to 258:11.

Providing an opinion as to a legal question may or may not have been appropriate for an expert witness under Federal Rule of Evidence 702. Compare, e.g., Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006), with Fed. R. Evid. 702, 704.

But the record before the Court says nothing about whether the HR employee was put forward as an expert.

Maybe the point is that the HR employee's testimony was appropriate as lay opinion testimony under Federal Rule of Evidence 701. But the Plaintiff does not get into that question. And it, too, may not be a simple one. See, e.g., United States v. Jones, 737 F. App'x 68, 73 (3d Cir. 2018) ("Lay witnesses . . . may not opine concerning what conclusions to draw from the facts[.]"); United States v. Wadley, 2022 WL 1011693, at *3 (3d Cir. Apr. 5, 2022) (same); cf. Am.'s Collectibles Network, Inc. v. MIG Broadcasting Grp., Inc., 330 F. App'x 81, 91 (6th Cir. 2009) ("The problem with lay witness testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards.") (cleaned up); United States v. Kingston, 971 F.2d 481, 486 (10th Cir. 1992) ("[L]ay witnesses . . . are not permitted to give opinions as to what the law is."); Fed. R. Evid. 701(c) ("[T]estimony in the form of an opinion [by a lay witness] is limited to one that is . . . not based on scientific, technical, or other specialized knowledge[.]"); 4 Weinstein's Federal Evidence § 701.04 (2025).

Bottom line: without the Plaintiff developing a meaningful argument on this point, the Defendants cannot be forced to accept that the Plaintiff and her Coworkers were engaged in "substantially equal" work based on the HR witness' testimony.

See generally Stanziale, 200 F.3d at 107 (a plaintiff has the burden to show that comparators were paid more for substantially equal work).

\*      \*      \*

The Plaintiff's second argument: the "substantially equal" issue is no longer on the table because in a proceeding before an administrative agency, the Parent Company Defendant stated that the Plaintiff and her two Coworkers were working "substantially equal" jobs.  See Plaintiff's Cross-Motion for Summary Judgment at 10-11; see also Plaintiff's Reply Brief at 2-4; Plaintiff's Cross-Motion for Summary Judgment, Exhibit 3, at PL-00306 to -00312.

But again, this argument is not developed.

The Plaintiff does not explain why the Parent Company Defendant's statement might now constrain the Lab-Defendant.

And more fundamentally: there is no argument as to whether the referenced statement, made before an administrative body, binds the Defendants here.  See Plaintiff's Cross-Motion for Summary Judgment at 11; Plaintiff's Reply Brief at 2-4.  No cases are cited, and no particular legal doctrine is invoked.

It may be, to cite a possible example, that the law of judicial estoppel has a role to play.  See Montrose Med. Grp. Participating Savs. Plan v. Bulger, 243 F.3d 773, 779 (3d Cir. 2001) ("Judicial estoppel bars a litigant from asserting a position that is inconsistent with one he or she previously took before . . . [an] agency.").

But applying that doctrine generally requires a determination that a party "inten[ded] to play fast and loose with the court." Id. at 780.  And the factual and legal arguments that might potentially shed light on this sort of "intent" have not been put before the Court, and the Plaintiff offers no reason why they can simply be assumed.  See In re Kane, 628 F.3d 631, 640 (3d Cir. 2010) (judicial estoppel did not apply when there were inconsistencies between statements during a divorce proceeding and a later bankruptcy proceeding but no sign of bad faith); Chao v. Roy's Constr., Inc., 517 F.3d 180, 185-86 & n.5 (3d Cir. 2008) (same, when there were inconsistencies between statements during an administrative proceeding and a later court action but nothing else "that justif[ies] application" of judicial estoppel).

7

                \*     \*     \*

Where things stand:

The Plaintiff suggests the Defendants' hands are tied here as to whether she and her Coworkers were doing "substantially equal" work --- first, because of testimony from the HR employee; and second, because of the position the Parent Company previously took before an agency.

But neither of these arguments is fleshed out.  No case or legal doctrine is cited in support of either argument.  This gives the Court too little to go on.  "[C]ourts generally should not address legal issues that the parties have not developed through proper briefing," Sw. Pa. Growth All. v. Browner, 121 F.3d 106, 122 (3d Cir. 1997), and the Court will not do so here.

In light of this, the Court must conduct a "substantially equal" analysis.  That comes in Part IV, after a brief discussion of the relevant general principles as to summary judgment.  See Part III.

## III. **Summary Judgment**

The parties, as noted, have each moved for summary judgment, and that means "clear[ing] two hurdles."  Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 251 (3d Cir. 2010).

The first: whether "there are no genuine questions of material fact."  Id.; see Fed. R. Civ. P. 56(a).

The second: whether the moving party "is entitled to judgment as a matter of law."  Howard Hess Dental Lab'ys, 602 F.3d at 251; see Fed. R. Civ. P. 56(a).

As to the second of these two hurdles, there are evidentiary guardrails, and also substantive rules as to the marks the moving party must hit.

As to the evidence:

"[A] district court may not make credibility determinations or engage in any weighing of the evidence[.]"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004).  The court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up); accord Tolan v. Cotton, 572 U.S. 650, 660

(2014). And "[o]n cross-motions for summary judgment, the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made." Pichler v. UNITE, 542 F.3d 380, 386 (3d Cir. 2008) (cleaned up).

As to the substantive rules:

A party that presses a Rule 56 motion, as here, is "entitled to judgment" when the "[evidence] is so one-sided that [the moving party] must prevail." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In turn, whether a moving party can show "that [it] must prevail" depends on whether it has the burden of proof at trial.

                         *    *    *

Here, the burden is the Plaintiff's.[6]

This means the Plaintiff can prevail on her current summary judgment motion by "supporting [her] motion[] with credible evidence that would entitle [her] to a directed verdict if not controverted at trial." In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (cleaned up).[7]

---

[6] As noted, see Part I.B, the Plaintiff presses four claims. She bears the burden at trial as to each. As to the Equal Pay Act claim, see Angelo v. Bacharach Instrument Co., 555 F.2d 1164, 1171 (3d Cir. 1977); accord, e.g., Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 656 (7th Cir. 2010); see also Model Civil Jury Instructions, Third Circuit § 11.1 (2024). So too as to the various other laws invoked here. See Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989) (Title VII); Shepherd v. Hunterdon Dev. Ctr., 174 N.J. 1, 24 (2002) (New Jersey Law Against Discrimination); cf. Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 56 (2005) (describing "the ordinary default rule that plaintiffs bear the risk of failing to prove their claims").

[7] Another way of putting this: "[the Plaintiff] must show that, on all the essential elements of [her] case . . . no reasonable jury could find for the non-moving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (quoted by the Third Circuit in In re Bressman, 327 F.3d at 238); accord, e.g., 11 Moore's Federal Practice --- Civil § 56.40 (2024) (discussing moving party's burden in general); 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2727.1 (same).

                              *      *      *

By contrast, the Defendants do not bear the burden on any of the claims pressed here by the Plaintiff.  See footnote 6.

This means they face a fork in the road.

They can win on summary judgment by hanging back, and "pointing . . . [to] an absence of evidence to support the [other side's] case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 213 (3d Cir. 2017).

Or they can opt to push forward affirmatively, pressing evidence to try to sink a particular part of their opponent's case.  See 11 Moore's Federal Practice --- Civil § 56.40 (2024); 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2727.1; see also Celotex, 477 U.S. at 331 (Brennan, J., dissenting).

## IV.   The Plaintiff's Federal Equal Pay Act Motion

The Court concludes here the Plaintiff has not established as a matter of law that the Coworkers put forward as her Equal Pay Act comparators were doing "substantially equal" work to hers.

The record is sparse where it must be solid --- as to skill, effort, and responsibility.

Therefore, the Plaintiff's summary judgment motion must be denied.

Before getting to this, see Part IV.B, a last bit of background.

### A.   Legal Principles

The federal Equal Pay Act forbids employers from:

> paying wages to employees . . . at a rate
> less than the rate . . . [paid] to employees
> of the opposite sex . . . for equal work on
> jobs the performance of which requires equal
> skill, effort, and responsibility, and which
> are performed under similar working
> conditions[.]

29 U.S.C. § 206(d)(1).

                              *      *      *

10

On summary judgment, a woman suing under the federal Equal Pay Act must show that she is being paid less than a man "for equal work." Id.; see Stanziale, 200 F.3d at 107.

In this context, "equal" means "substantially equal," Shultz, 421 F.2d at 265 --- as to "skill, effort, and responsibility, under similar working conditions." Stanziale, 200 F.3d at 107 (citing EEOC v. Del. Dep't of Health & Soc. Servs., 865 F.2d 1408, 1413-14 (3d Cir. 1989)).[8]

To make out her claim, it is for a plaintiff to put forward appropriate "comparators" --- "employees of the opposite sex [who] were paid differently for performing [substantially] equal work." Id. (cleaned up); see Summy-Long, 715 F. App'x at 183; accord, e.g., Spencer, 919 F.3d at 203; Terry, 910 F.3d at 1008.

And the substantial equality question is highly "fact intensive." Brobst v. Columbia Servs. Int'l, 761 F.2d 148, 156 (3d Cir. 1985); see Heller v. Elizabeth Forward Sch. Dist., 182 F. App'x 91, 95 (3d Cir. 2006); accord, e.g., Hunt v. Neb. Pub. Power Dist., 382 F.3d 1021, 1030 (8th Cir. 2002); Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1414 (9th Cir. 1988); Younts v. Fremont Cnty., 370 F.3d 748, 753 (8th Cir. 2004) ("We are required to compare the jobs in question in light of the full factual situation[.]") (cleaned up); see also Puchakjian v. Twp. of Winslow, 804 F. Supp. 2d 288, 295 (D.N.J. 2011), aff'd, 520 F. App'x 73 (3d Cir. 2013).

It generally requires close-to-the-ground sifting of the evidence as to three (or four) things. See 29 U.S.C. § 206(d)(1).

Walk through those here.

\*      \*      \*

First, skill. See id.

Do the jobs require roughly equal levels of training, experience, or education? See, e.g., Younts, 370 F.3d at 753; Puchakjian, 804 F. Supp. 2d at 302; Glodek v. Jersey Shore State Bank, 2009 WL 2778286, at \*5-6 (M.D. Pa. Aug. 28, 2009); see also 29 C.F.R. § 1620.15(a) (describing the "equal skill" standard to include "factors [such] as experience, training, education, and ability").

Second, effort. See 29 U.S.C. § 206(d)(1).

---

[8] Whether the "similar working conditions" showing must be made here is addressed briefly below at footnote 18.

Do the jobs take about the same amount of exertion?  See Angelo
v. Bacharach Instrument Co., 555 F.2d 1164, 1175-76 (3d Cir.
1977); accord, e.g., Younts, 370 F.3d at 753; Usery v. Columbia
Univ., 568 F.2d 953, 959 (2d Cir. 1977); Brennan v. Bd. of
Educ., Jersey City, 374 F. Supp. 817, 827 (D.N.J. 1974); see
also 29 C.F.R. § 1620.16.

Third, responsibility.  See 29 U.S.C. § 206(d)(1).

Do the jobs come with a substantially equal "degree of
accountability"?  Gumbs v. Del. Dep't of Lab., 745 F. App'x 457,
460 (3d Cir. 2018); accord, e.g., Younts, 370 F.3d at 753.  Does
one person supervise colleagues, while another does not?  See,
e.g., Hunt, 282 F.3d at 1030; Gu v. Boston Police Dep't, 312
F.3d 6, 16 (1st Cir. 2002); Howard v. Lear Corp. EEDS &
Interiors, 234 F.3d 1002, 1005 (7th Cir. 2000).  Does one person
make the final, end-of-the-road decisions, while her colleague's
decisions have to be double-checked?  See, e.g., Epstein v.
Sec'y, U.S. Dep't of Treasury, 739 F.2d 274, 279 (7th Cir.
1984); Orahood v. Bd. of Trs. of Univ. of Ark., 645 F.2d
651, 655 (8th Cir. 1981)  Does one person work on tasks or
projects that are more important for the bottom line?  See,
e.g., EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 257 (2d
Cir. 2014); Rodriguez v. Smithkline Beecham, 224 F.3d 1, 7 (1st
Cir. 2000).

And there is a sometimes-invoked[9] fourth factor --- a look to
whether the two jobs are done "under similar working
conditions."  29 U.S.C. § 206(d)(1).

Are they performed in similar "surroundings" and among similar
"hazards"?  29 C.F.R. § 1620.18; see Corning Glass Works v.
Brennan, 417 U.S. 188, 201-03 (1974); Del. Dep't of Health &
Soc. Servs., 865 F.2d at 1417; Angelo, 555 F.2d at 1169-70;
accord, e.g., Cullen v. Ind. Univ. Bd. of Trs., 338 F.3d 693,
700 n.3 (7th Cir. 2003).[10]

---

[9]  "Sometimes" because this factor typically comes up in the
context of industrial work.  See Corning Glass Works v. Brennan,
417 U.S. 188, 202 (1974); Angelo, 555 F.2d at 1169-70.  This
factor is also sometimes applied in other contexts.  See, e.g.,
Del. Dep't of Health & Soc. Servs., 865 F.2d at 1417; Usery, 586
F.2d at 961-62.

[10]  In adding up the three (or four) factors set out above,
courts sometimes work through the factors one-by-one, looking to
see if each matches up as between the plaintiff and the proposed
comparators.  See, e.g., Steele v. Pelmor Lab'ys, Inc., 642 F.

**B.**    **Application**

With this background in mind, come back now to this case.

The Plaintiff has picked her comparators --- the Coworkers alluded to above.[11]    See Complaint ¶¶ 54-76; see also Plaintiff's Cross-Motion on Summary Judgment at 1, 10-11.

The question: did the Plaintiff and her Coworkers do "substantially equal" work?

The Court's conclusion: judgment as a matter of law cannot be entered for the Plaintiff to the extent it might be based on such a "substantially equal" determination.

This is because the record that has been put before the Court is too sparse.

To see why, go through the evidence as to what the federal Equal Pay Act requires --- a comparison as to skill, effort, and responsibility.[12]

_____

App'x 129, 136 (3d Cir. 2016); accord, e.g., Forsberg, 840 F.2d at 1416; Usery, 568 F.2d at 959-60; see also Barbara T. Lindemann, Paul Grossman & Geoff Weirich, Employment Discrimination Law § 19.II.C.2 (7th ed. 2023).  And in some cases, courts take a holistic approach, placing the plaintiff and the comparators side-by-side and conducting an overarching analysis --- guided by the statutory factors, without mechanically focusing on one or the other.  See Steele, 642 F. App'x at 136; Yan Yan v. Fox Chase Cancer Ctr., 627 F. App'x 66, 70 (3d Cir. 2015); cf. Younts, 370 F.3d at 753; Buntin v. Breathitt Cnty. Bd. of Educ., 134 F.3d 796, 799 (6th Cir. 1998) ("Whether the work of two employees is substantially equal must be resolved by an overall comparison of the work, not its individual segments.") (cleaned up).  Either way, though: the result is the same in this case.

[11]  Recall that the Coworkers are two male employees who also worked at the Lab.  See Plaintiff's Statement of Undisputed Facts ¶¶ 15-17; Defendants' Response ¶¶ 15-17; see also Plaintiff's Cross-Motion for Summary Judgment, Exhibit 24.

[12]  And maybe working conditions.

1.  **Skill**

Skill first.  Did the Plaintiff's job, and her Coworkers',
require roughly the same skill?

As to this question, the evidence speaks to what the Plaintiff
did on a day-in, day-out basis.  See Defendants' Motion for
Summary Judgment, Exhibit R, at 99:4 to 100:17, 105:2-9; see
also id., Exhibit II, at 11:9-17.

But that is only one side of the ledger.

There is little proof as to what the Coworkers did day-to-day[13] -
-- what their main workplace tasks were, what their main
challenges were.  And this makes it especially hard to
understand the skill level they brought to their work, let alone
to compare it to what the Plaintiff brought to hers.

*    *    *

One possible way to close the gap might be to proceed on the
basis that the Plaintiff and the Coworkers --- veterinary
pathologists, all --- did work that called for roughly the same
set of skills.

But that would veer close to allowing the Plaintiff, who bears
the burden, to assume here what she must prove.

And what the Plaintiff folds into the mix --- a 30,000-foot
description of what veterinary pathologists do[14] --- is too
generic to move the needle.

The case law makes that clear.  See Spencer, 919 F.3d at 204
("[A] plaintiff may not rely on broad generalizations at a high
level of abstraction."); see also Angelo, 555 F.2d at 1171
("identical litanies of . . . functions" is not enough to show
that two jobs "required substantially the same skill, effort,

---

[13]  Indeed, it is not clear that the Coworkers were deposed in
this case.

[14]  See Plaintiff's Cross-Motion for Summary Judgment,
Exhibit 11, at 110:21-25, 111:11-12, 111:16-20 (stating that the
Plaintiff and the Coworkers "[r]eview the cases that are
assigned . . . ., interact with fellow pathologists on difficult
cases as needed, [and] return phone calls to clients"); see also
Plaintiff's Statement of Undisputed Facts ¶ 31; Defendants'
Response ¶ 31.

and responsibility"); Wheatley v. Wicomico Cnty., 390 F.3d 328, 332 (4th Cir. 2004) (declining to accept argument that "employees with the same titles and only the most general similar responsibilities must be considered equal under the [Equal Pay Act]") (cleaned up); Epstein, 739 F.2d at 277 n.6 ("Similar job descriptions alone . . . do not require a finding of substantial equality[.]"); cf. Berg v. Norand Corp., 169 F.3d 1140, 1146 (8th Cir. 1999) (no "substantially equal" work when a plaintiff does not explain how she and her comparators are "similar at all other than that they are managers") (cleaned up).

Bottom line: the proof put before the Court says little about what the Coworkers actually did --- and therefore supplies an insufficient basis for inferring as a matter of law that their work required roughly the same skill as the Plaintiff's.[15]

                    *    *    *

In addition to the above, there is affirmative evidence that a substantially-comparable-skill inference cannot be made here as a matter of law.

The Plaintiff and the Coworkers are veterinary pathologists. And while all veterinary pathologists assess cases and make diagnoses, see Defendants' Motion for Summary Judgment, Exhibit R, at 99:2-17, the cases they work through are not all the same. Some are especially hard or obscure. See id.,

---

[15] And note in this context: the record does not suggest the sort of small, homogeneous workplace in which there might be a stronger-than-usual inference that everyone was essentially doing the same thing. Cf. Sims-Fingers v. City of Indianapolis, 493 F.3d 768, 770-71 (7th Cir. 2007). Far from it. The Plaintiff worked in New Hampshire, remotely. See Plaintiff's Cross-Motion for Summary Judgment, Exhibit 24. At one point in time, one Coworker appeared to work in San Diego in a lab, and the other appeared to work in Colorado, remotely. See id. The Coworkers initially worked at a specialty lab, Ethos Veterinary Health, LLC, that was later purchased, in part, by the Lab-Defendant. See Defendants' Statement of Undisputed Facts ¶¶ 1, 14, 123, 128; Plaintiff's Response to the Defendants' Statement of Undisputed Facts (ECF 122) ("Plaintiff's Response) ¶¶ 1, 14, 123, 128. And the Plaintiff worked at a different lab, ZNLabs, LLC. By the time the Plaintiff was hired, that lab had been acquired as a subsidiary of the Parent Company. See Defendants' Statement of Undisputed Facts ¶ 36; Plaintiff's Response ¶ 36.

Exhibit WW; see also id., Exhibit T.  Others are a bit closer to routine.  See id., Exhibits S, T, WW.

The evidence, taken in the light most favorable to the Defendants (as required for now, see Canada, 49 F.4th at 345), suggests two things as to this.

First, that the Plaintiff and her Coworkers did not tackle the same diet of cases.  The Coworkers were assigned a relatively larger number of cases from the especially-difficult category.  This is because cases from a specialty hospital were generally assigned to the Coworkers.  See Defendants' Motion for Summary Judgment, Exhibit E, at 174:25 to 175:4; see also id., Exhibit R, at 111:20-21.

Second, those cases --- "almost always multisite bizarre cases" id., Exhibit WW; see also id., Exhibit E, at 174:11-13 --- were usually "more complex."  Id., Exhibit V, 145:19.  As to such cases, pet owners were "willing to spend more money . . . [and] therefore, more testing is performed, and . . . [more] samples are collected."  Id., Exhibit E, at 174:14-20; see also id., Exhibit V, at 145:17-21.

And this implied the need to bring special skills to bear.  See id., Exhibit V, 145:18-21 (specialty cases were "much more complex, much harder and required often a much higher level of expertise than the average cases").

All of this makes it impossible to say on the current record that the Plaintiff and the Coworkers did work that required roughly the same skill level.  After all, there is evidence that the Coworkers handled an especially high volume of complex cases --- and a reasonable jury could conclude that those require distinct skills.[16]

---

[16]  To be sure, the evidence suggests the possibility that the Defendants affirmatively sought to smooth out employees' work burdens.  Efforts were apparently made to weight cases based on their difficulty, and then to dole cases out in light of that weighting.  See Defendants' Motion for Summary Judgment, Exhibits S, WW.  If the Plaintiff had a higher number of somewhat less complex cases, then the skill required to manage her docket as a whole may well have been roughly equal to the skill required of her Coworkers --- as the Coworkers potentially managed a lower number of somewhat more complex cases.  But it

*    *    *

The Plaintiff seems to suggest another basis for concluding her work required the same level of skill as the Coworkers'.

Namely, the record suggests the Plaintiff has six more years of experience than one of the two Coworkers and nineteen more than another. <u>See</u> Plaintiff's Cross-Motion for Summary Judgment, Exhibit 15; <u>see also</u> Defendants' Motion for Summary Judgment, Exhibit R, at 159:25 to 160:2.

But standing alone, this does not indicate that the Plaintiff's work required roughly the same degree of skill as the Coworkers (or that her work required more).

---

is not crystal clear that the Plaintiff is pursuing this line of argument. It is not meaningfully developed in her papers. <u>See</u> Plaintiff's Opposition Brief (ECF 121) at 5-7 (arguing that the workloads were comparable but not suggesting that the skillsets needed were the same). And moreover, the basic evidence that would support such an argument has not been put before the Court --- information, for example, as to how cases were weighted, and how many cases of each weight were given to the Plaintiff on the one hand and to the Coworkers on the other. More generally, the record evidence is both glancing and tentative as to a key point --- efforts to equalize workload, which, as noted, might possibly have had the knock-on effect of equalizing the skill it took to handle a pathologist's overall docket. Evidence on that point is reflected mainly in two emails. <u>See</u> Defendants' Motion for Summary Judgment, Exhibits S, WW. These emails are hard to parse. And they speak to then-underway work by the Defendants to smooth out work burdens between the various pathologists --- not to whatever the Defendants' final, finished approach to equalizing work may have been. <u>See</u> <u>id.</u>, Exhibit W ("The exact number of cases that a pathologist is required to do has not been established. We are working toward that and . . . a 'weighted average expectation of work.'"); <u>see also</u> <u>id.</u> (a supervisor "had no way of judging if [a caseload] was about right as [he] didn't know the case load in [a certain location] --- how heavy it was with multisite, lots of slide cases"); <u>id.</u>, Exhibit S ("[W]e need to standardize what a day[']s work consists of in terms of number of cases and since not all cases are of equivalent difficulty . . . a method . . . [is] needed.").

17

The federal Equal Pay Act prohibits "discriminat[ing] . . . [between] jobs the performance of which requires equal skill." 29 U.S.C. § 206(d) (emphasis added); see also 29 C.F.R. § 1620.15(a).

Added skill (sometimes measured by experience) that a particular employee brings into the workplace matters --- but only if that extra increment of skill is necessary ("require[d]," 29 U.S.C. § 206(d)) for the "the performance" of her job.  See Johnson v. Fed. Express Corp., 604 F. App'x 183, 188 (3d Cir. 2015); Rhoades v. Young Women's Christian Ass'n, 423 F. App'x 193, 197-98 (3d Cir. 2011) (zeroing in on the "skill and experience . . . necessary to perform the responsibilities" of a certain job); accord, e.g., King v. Univ. Healthcare Sys., LC, 645 F.3d 713, 724 (5th Cir. 2011); Simpson v. Merchs. & Planters Bank, 441 F.3d 572, 578 (8th Cir. 2006); Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1533 (11th Cir. 1992); see also Dubowsky v. Stern, Lavinthal, Norgaard & Daly, 922 F. Supp. 985, 990 (D.N.J. 1996) ("[I]t is the jobs, and not the individuals who held the jobs, that the Court must compare.").

The Plaintiff may, herself, have had a good deal more skill than her Coworkers.  But standing alone, that does not allow the Court to back into a conclusion that "the performance" of the jobs "require[d]" the same skills.  29 U.S.C. § 206(d).  That an accountant has a math PhD does not shed light on what the core, "require[d]" skills of being an accountant are.

*    *    *

Bottom line: giving the Defendants the inferences they are entitled to now, see Canada, 49 F.4th at 345, it cannot be said that the evidence put before the Court could lead a reasonable jury to only one possible conclusion --- that the Plaintiff's job and the Coworkers' jobs were "substantially equal" in terms of needed skill.

## 2.  Effort

The next question is effort.  Did the Plaintiff's job, and her Coworkers', require roughly the same effort?

Same basic issue --- there is not enough evidence before the Court to rule as a matter of law.

The most clarifying piece of proof: deposition testimony from a supervisor that the Plaintiff and the Coworkers did "a similar

18

amount of work." Plaintiff's Cross-Motion for Summary Judgment, Exhibit 11, at 89:22-25.

But it would take a very hard squint to extract from that bare statement the conclusion that all three pathologists put in the same effort.

After all, "effort" is a matter of both physical and mental exertion. See Angelo, 555 F.2d at 1175; accord, e.g., Younts, 370 F.3d at 753; Usery, 586 F.2d at 959; Brennan, 374 F. Supp. at 827; see also 29 C.F.R. § 1620.16.

Two people may work forty hours a week. But one person's work week may look substantially different from the other's. She could be spending those forty hours deeply under the hood on one difficult problem, intensely focused on it; her counterpart could be breezing through dozens of easier issues.

To have a solid-enough sense of how "effort" stacks up between jobs, more is needed than a sense that the hours ("similar amount of work") are roughly equivalent. But that is what the Court has to go on here.[17]

### 3. **Responsibility**

The third element is responsibility.

Start by noting that employees can shoulder responsibility in different ways. See 29 C.F.R. § 1620.17(a) ("Differences in the degree of responsibility required in the performance of otherwise equal jobs cover a wide variety of situations.").

An employee might be a supervisor, in charge of managing a dozen or so subordinates. See Hunt, 282 F.3d at 1030; Gu, 312 F.3d at 16; Howard, 234 F.3d at 1005; Fallon v. Illinois, 882 F.2d 1206, 1209-10 (7th Cir. 1989); Laffey v. Nw. Airlines, Inc., 740 F.2d 1071, 1083-84 (D.C. Cir. 1984); Hill v. J.C. Penney Co., 688 F.2d 370, 373-74 (5th Cir. 1982).

She could be required to make the final call as to certain big decisions. See, e.g., Epstein, 739 F.2d at 279; Orahood, 645 F.2d at 655 (as to the authority to hire and fire).

---

[17] Aggregate effort can also be smoothed out by managers. But the evidence on those sorts of efforts is, as noted in footnote 16, not clarifying enough.

Or he could be called on to do work that is especially important
to his employer.  See, e.g., Port Auth. of N.Y. & N.J., 768 F.3d
at 257-58; Rodriguez, 224 F.3d at 7; Stopka v. All. of Am.
Insurers, 141 F.3d 681, 686 (7th Cir. 1998); Ruffin v. Cnty. of
L.A., 607 F.2d 1276, 1281-82 (9th Cir. 1979).

But again, little evidence has been put before the Court in
these areas.

For example, it appears that the Plaintiff and Coworkers worked
on the same team and reported to the same person.  See
Defendants' Motion for Summary Judgment, Exhibit WW; Defendants'
Statement of Undisputed Facts ¶ 112; Plaintiff's Response ¶ 112.

But this proves too little.  In the absence of more directly-
clarifying evidence, courts routinely hold that "substantially
equal" work cannot be shown as a matter of law even when a
plaintiff and her comparators work on the same team or under the
same supervisor.  See, e.g., Rhoades, 423 F. App'x at 196-197
(where a successor had replaced a plaintiff in her role); Polak
v. Va. Dep't of Env't Quality, 57 F.4th 426, 430-32 (4th Cir.
2023); see also Flannery v. Riverside Rsch. Inst., 2021
WL 1192526, at *6 (S.D. Ohio Mar. 30, 2021); cf. Mitchell v.
Toledo Hosp., 964 F.2d 577, 583 n.5 (6th Cir. 1992) (under the
"similarly situated" standard of Title VII); Thompson v. Ohio
Civil Rights Comm'n, 2009 WL 10679436, at *8 (S.D. Ohio July 7,
2009) (same).

Is there other meaningful evidence here?  Some.  But it is both
sparse and equivocal.  Compare Defendants' Motion for Summary
Judgment, Exhibit LL (describing one Coworker's non-specialty
caseload as "one of [the] least productive"), with id.,
Exhibit WW (the Coworkers' cases are "almost always multisite
bizarre cases"), and id., Exhibit E, at 174:14-20 (the pet
owners are "willing to spend more money . . . [and] therefore,
more testing is performed, and . . . [more] samples are
collected").

Bottom line: there is too little evidence as to responsibility
to support an inference as a matter of law that the Plaintiff's
and Coworkers' jobs involved "substantially equal"
responsibility.

                        *     *     *

To sum up: the Plaintiff has moved for summary judgment on her
federal Equal Pay Act claim, but whether she and the Coworkers

                              20

did "substantially equal" work is a live question, <u>see</u> Part II,
and the evidence put before the Court is sparse.  There are few
undisputed facts here as to skill, <u>see</u> Part IV.B.1; effort, <u>see</u>
Part IV.B.2; or responsibility, <u>see</u> Part IV.B.3.[18]  And there are
certainly not enough facts here to take the "substantially
equal" question away from the jury as a matter of law --- and
all the more so when the Court takes into account the
requirement, at this stage, to "draws inferences in favor of the
[Defendants]."  <u>Pichler</u>, 542 F.3d at 386.

## V.    <u>The Defendants' Federal Equal Pay Act Motion</u>

Now look to the flip side.[19]

As to the Defendants' summary judgment motion, the Defendants
had two different ways available to them to show they were
"entitled to judgment."  <u>See</u> Part III.

First, they could have opted to spotlight gaps in the
Plaintiff's case, and argue that there is not enough there.  Or,
second, they could have poked holes in the Plaintiff's case by
affirmatively putting forward evidence that negates an essential
element of the case.  <u>See</u> <u>id</u>.

---

[18]  A fourth and final thing is sometimes considered --- did a
plaintiff and her comparators labor under "similar working
conditions"?  <u>See</u> Part IV.A.  Assuming <u>arguendo</u> that this factor
applies here, same issue: too little to work with.  No evidence
has been put before the Court as to working conditions, except
for that one Comparator (like the Plaintiff) worked remotely at
some point and one did not.  <u>See</u> Plaintiff's Cross-Motion for
Summary Judgment, Exhibit 24; footnote 15.

[19]  Each party's summary judgment motion must be taken on its
own, and on that party's chosen arguments.  <u>See</u> <u>Celotex</u>, 477
U.S. at 323 ("[A] party seeking summary judgment always bears
the initial responsibility of informing the district court of
the basis for its motion[.]"); <u>Spivack</u> v. <u>City of Phila.</u>, 109
F.4th 158, 166 n.5 (3d Cir. 2024) ("When . . . both parties move
for summary judgment, courts must rule on each party's motion on
an individual and separate basis, determining, for each side,
whether a judgment may be entered in accordance with the summary
judgment standard.") (cleaned up); <u>Marciniak</u> v. <u>Prudential Fin.
Ins. Co. of Am.</u>, 184 F. App'x 266, 270 (3d Cir. 2006) (similar);
<u>accord</u> 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2720.

The Defendants chose the second route.  _See_ Defendants' Motion for Summary Judgment at 10–11.

They did so, in part, by affirmatively arguing the Coworkers do not count as the Plaintiff's comparators.  _See id._

_First_, the Defendants point to the evidence that the Coworkers worked on a number of cases that came from a specialty hospital. _See id._ at 11.  These cases, discussed above, were said to be "bizarre," and "more complex."  _See_ Defendants' Statement of Undisputed Facts ¶ 168; Plaintiff's Response ¶ 168; _see also_ Defendants' Motion for Summary Judgment, Exhibit V, at 145:19-20 (these cases "required often a much higher level of expertise than the average cases").

But this argument does not work here.  At this point, it is the Plaintiff who is entitled to every reasonable inference, _see_ _Pichler_, 542 F.3d at 386, and if the pathologists' employers were working to smooth out work burdens, _see_ footnote 16 --- then everything may have come out in the wash, and the Plaintiff and her Coworkers may have been in the same boat as to the skill, effort, and responsibility involved in their overall dockets.  _See_ Part IV.B.

_Second_, the Defendants cite other kinds of tasks that the Coworkers took up in their roles --- research, for example.  _See_ Defendants' Motion for Summary Judgment, Exhibit V, at 154:20 to 155:13.  These tasks, the Defendants say, made the Coworkers' jobs different the Plaintiff's.  _See_ Defendants' Opposition Brief (ECF 119) at 6.

But "[t]he crucial finding . . . is whether the jobs to be compared have a 'common core' of tasks, _i.e._, whether a significant portion of the two jobs is identical."  _Brobst_, 761 F.2d at 156; _see_ _Gumbs_, 745 F. App'x at 459; _accord_, _e.g._, _Freyd_ v. _Univ. of Or._, 990 F.3d 1211, 1220 (9th Cir. 2021); _David_ v. _Bd. of Trs. of Cmty. Coll. Dist. No. 508_, 846 F.3d 216, 230 (7th Cir. 2017); _Brewster_ v. _Barnes_, 788 F.2d 985, 991 (4th Cir. 1986).

If yes, then "[t]he inquiry . . . turns to whether the differing or additional tasks make the work substantially different."  _Brobst_, 761 F.2d at 156.  If no, the inquiry stops there.  _See_ _id._; _accord_, _e.g._, _Cullen_, 338 F.3d at 698; _Conti_ v. _Universal_ _Enters., Inc._, 50 F. App'x 690, 696-97 (6th Cir. 2002);

Brewster, 788 F.2d at 991; EEOC v. Maricopa Cnty. Cmty. Coll. Dist., 736 F.2d 510, 513 (9th Cir. 1984).

There is evidence in the record that the Coworkers took up "additional tasks." For example, one Coworker was leading a research group for the Defendants and sometimes conducted research in connection with a university. See Defendants' Motion for Summary Judgment, Exhibit V, at 154:20 to 155:13. And the other Coworker participated in training and developing standard operating procedures. See id., Exhibit II, at 43:23 to 44:7.

But the Defendants make no argument (and present no evidence) as to how doing these "additional tasks" fit into the bigger picture. Were they random tack-ons? Or were the additional tasks part of the "common core" of the job that the Plaintiff and the Coworkers were doing?

None of this can be skipped over or assumed away. An associate at a law firm who also writes law review articles is not self-evidently doing a meaningfully different job than an associate who does not.

In short: the Defendants chose to put forward evidence that the Plaintiff could not show that she and her Coworkers did not do "substantially equal" jobs. But the Defendants' evidence is not enough as a matter of law --- and therefore, their summary judgment motion must be denied.

## VI.  **Other Claims**

As noted above, the Plaintiff has also pressed other claims.

Under federal law, there is a claim under Title VII (Count II). See Complaint ¶¶ 100-05.

Under New Jersey[20] law, there are claims under the Diane B. Allen Equal Pay Act, N.J.S.A. § 10:5-12(t) (Count III), and the New

---

[20]  New Jersey law applies here, for the same reasons set out in Schulman v. Zoetis, Inc., 684 F. Supp. 3d 275, 286-87 (D.N.J. 2023). The Defendants have, again, only listed the "on-paper differences between New Jersey law and New Hampshire law." Id. at 286; see Defendants' Motion for Summary Judgment at 17-25. But they do not explain how the differences could alter the

Jersey Law Against Discrimination, N.J.S.A. § 10:5-12(a) (Count IV).  See Complaint ¶¶ 106-17.

The Defendants have moved for summary judgment as to these claims.  See Defendants' Motion for Summary Judgment at 34-38. And the Plaintiff has sought summary judgment as to each of these claims, save the Title VII claim.  See Plaintiff's Cross-Motion for Summary Judgment at 21-25.

But these motions must all be denied.

This is because, under somewhat different verbal formulations, each of the statutes cited above requires a "substantially equal"-style comparison between the Plaintiff and her comparators.  See Qin v. Vertex, Inc., 100 F.4th 458, 474 (3d Cir. 2024) (Title VII); Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 109-10 (1990) (New Jersey Law Against Discrimination); N.J.S.A. § 10:5-12(t) (the Diane B. Allen Equal Pay Act).[21]

That comparison has not been adequately made out here.  See Part IV and Part V.  That means summary judgment must be denied as to the Plaintiff's various other claims, just as it must be denied as to her federal Equal Pay Act claim.

## VII. Conclusion

The parties' motions for summary judgment are denied.[22]

---

bottom-line result in this case.  See id. at 17-25. Accordingly, they have not triggered a choice-of-law analysis.

[21] The standards between these statutes are all slightly different one from the next.  But nothing here turns on those differences.

[22] The Defendants have also questioned whether the Parent Company Defendant is properly in this case.  See Defendants' Motion for Summary Judgment at 5-8.  The Court does not take up that issue now, given its resolution of the summary judgment motions. Should this issue make a practical difference and need resolving, renewed and fuller briefing will be necessary, on a schedule to be set by the United States Magistrate Judge.  Given the Court's resolution of the motions here as to liability, it does not take up the parties' various arguments as to damages. See Plaintiff's Cross-Motion for Summary Judgment at 40-50; Defendants' Motion for Summary Judgment at 38-40.

IT IS on this 6th day of May, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.